TURNER *v.* HAHN.

TROVER — *demand and refusal.* In the action of trover, proof of demand and refusal is made for the purpose of showing a conversion of the property by defendant, and, when the plaintiff is able to show such fact by other evidence, he need not resort to such proof.

NEW TRIAL — *verdict according to evidence.* The verdict of the jury in this case was according to the evidence, and a new trial was denied.

PRACTICE — *construction of a rule of court.* A rule of court, which requires that affidavits in support of a motion shall be served by copy upon the opposite party twenty-four hours before the hearing, does not comprehend affidavits read at the hearing on behalf of the party who resists the motion.

JUROR — *alienage of.* A verdict will not be set aside on account of the alienage of one of the jurors to whom no objection was made at the trial.

## Appeal from District Court, Gilpin County.

AT the trial G. E. Guinn testified on behalf of the plaintiff, that on 9th of September, 1865, he sold and delivered to plaintiff seven head of beef cattle, one of which was a blue roan steer about four years old, which would weigh twelve hundred pounds gross, and six hundred pounds net, worth about $100. On the eleventh of September he understood the blue roan steer had broken out and was gone; that he inquired for the steer and noticed for him; that he purchased the steer of Gartin, a ranchman, in Boulder county about the 1st of August, 1865, and kept possession of him until he sold him to plaintiff; when he purchased the steer he was branded on left hip with letter F, and had his left ear cropt; witness branded him on left shoulder with the letter F. About the last of November, or first of December, 1865, witness saw the steer at defendant's slaughter-house in Central City; witness went with plaintiff to defendant's shop that night, and had a conversation with defendant about the steer; defendant said he purchased the steer 15th August, 1865, of Gartin, and that he branded all the cattle purchased of Gartin on the loins with the letter F. Plaintiff and defendant agreed to go the next morning and see the steer; witness and plaintiff went up the next day about 9 o'clock, A. M. Defendant said there was no need of his going, and told plaintiff he would not go; witness saw the hide and head of said steer in defendant's slaughter-house, and found the same brands on it; witness testified that it was the hide of the blue-roan steer; defendant purchased cattle of Gartin about two weeks after witness did; the

steer was of a peculiar color ; never saw one before or since of such a color.

Defendant read the deposition of James B. Tourtellot, who testified that, on 6th of September, 1865, he took a steer from Gartin's ranch for defendant, and afterward turned him over to defendant ; that the steer was a brindle with staggy horns ; that on the 3d of September, 1865, Turner, the defendant, turned over to him to ranch, fourteen head of cattle, one of which was a roan or reddish roan steer, branded F on left hip, and F on left side between the hip and shoulder blade, pretty well up on the back ; that he returned the steer to defendant, in the latter part of September or first of October, 1865.

Thomas Peacock testified, on behalf of defendant, that Tourtellot delivered the roan steer spoken of in his deposition on the 16th of October, 1865 ; that the steer was taken to Blackhawk, and thence to the Elk meadow ranch to pasture ; that the steer was of a blue roan color, about four years old, staggish horns, weighed eight or nine hundred pounds gross ; was branded just behind left foreshoulder, pretty high upon the back with letter F, had a circle on left hip with letter in it ; could not tell what the letter was ; steer would dress about four hundred pounds ; next saw the steer on the Elk meadow ranch two weeks afterward ; did not see the steer again until I saw him at the slaughter-house ; I suppose that is the time spoken of by Guinn ; knows it was the same steer delivered to defendant 16th October, 1865, by Tourtellot.

George Ritter, on behalf of defendant, testified, that on the 19th of October, 1865, he took four head of cattle to the Elk meadow ranch, and delivered them to Henry Ripley for defendant, the cattle were turned over to him by Thomas Peacock ; one was a blue roan steer, marked F on left hip, and F right back of shoulder, four or five inches from back bone ; he looked to be about four years old.

Henry Ripley, on behalf of defendant, testified, that he was the owner of the Elk Meadow ranch ; that on the 16th of October, 1865, he received from George Ritter four head

of cattle to ranch and herd for defendant; that one was a roan steer; that on the 20th day of November, 1865, he drove the steer, together with other cattle, to defendant at Central City, and put the steer in defendant's close-pen at slaughter-house.

William Feld, on behalf of defendant, testified, that he saw the blue roan steer in the slaughter-pen, and that the steer, when killed, weighed four hundred and four pounds; that the steer was killed at defendant's slaughter-house at night, eight or ten o'clock; that he did not see any marks on the steer.

At the hearing of the motion for a new trial the counsel for defendant below read affidavits to show that Cyrille Harpin, one of the jurymen who sat at the trial, was not a citizen of the United States, and that he could not speak, write, read or understand the English language, except a few common and simple words, and that said Harpin was a citizen of Great Britain; that neither the defendant below nor his counsel had any knowledge of Harpin's alienage or of his ignorance of the English language until after the trial.

Counsel for plaintiff below offered affidavits to show that Harpin was well enough acquainted with the English language to converse therein, and that he did converse with his fellow jurors about the cause, and that they discovered in him no lack of understanding or of capacity to comprehend the same; that, during the progress of the trial, defendant's counsel was informed that Harpin was not a citizen.

To these affidavits counsel for defendant below objected, that copies had not been served upon him according to the following rule of court:

"In all motions, not being motions for continuance and not of course, twenty-four hours' notice of hearing shall be given, and such notice shall be in writing, and shall specify the objections and points raised by the motion, and, if the motion shall be founded upon affidavits, copies of such affidavits shall be furnished with the motion and notice."

The court allowed the affidavits to be read.

Mr. L. C. ROCKWELL, for appellant.

Mr. S. B. HAHN, for appellee.

HALLETT, C. J. This was an action of trover and conversion, in which there was judgment in favor of the appellee in the court below for the sum of $60 and costs. We are asked to reverse this judgment for several causes, the first of which is that improper instructions were given to the jury upon the trial in the district court. The objection to these instructions appears to be that they are so framed that the jury were at liberty to find for the appellee, in the absence of testimony showing a demand by him for the property, the value of which he sought to recover, and a refusal by the appellant to deliver it. Upon this point it is only necessary to say that, in actions of this kind, proof of demand and refusal is made for the purpose of showing a conversion of the property by the defendant, and, when the plaintiff is able to show such fact by other evidence, he need not resort to proof of demand and refusal. 1 Chitty's Plead. 157; *Tompkins* v. *Hale*, 3 Wend. 406.

In this case there was evidence tending to show that the appellant had killed the steer, the value of which the appellee was seeking to recover, and, if the jury believed this evidence, proof of demand and refusal was not at all necessary. It is also urged that the evidence is not sufficient to sustain the verdict; but we are unable to adopt the views of the appellant. We are entirely satisfied that the jury decided the case correctly. After the trial in the district court the appellant filed several affidavits showing that one Harpin, a juror who sat upon the trial, was an alien, and that he understood the English language but imperfectly; that the appellant and his counsel had no knowledge of these facts until after the trial. For this and other reasons, the appellant moved the district court to set aside the verdict and grant a new trial, which motion was denied. Upon the hearing of this motion the appellee produced the affidavit of one Geriaux, in which the deponent stated that during the trial of the cause he informed the counsel for

appellant of the facts before mentioned, touching the alienage and ignorance of Harpin, and also the affidavits of six of the jurors who sat upon the trial, in which they deposed that Harpin, while in the jury room, conversed freely about the evidence, and appeared to understand it perfectly, and they discovered no incapacity in him. To the reading of these affidavits, presented by the appellee, the appellant objected, alleging that, under a rule of the court which is set out in the bill of exceptions, he should have been served with copies of the affidavits twenty-four hours before the hearing, but the court permitted them to be read. Obviously the rule applies only to affidavits designed to be read in support of a motion, and, as these affidavits were offered for the purpose of resisting a motion, the case is not within the terms of the rule. It is clear that Harpin was sufficiently acquainted with the English language to enable him to comprehend the evidence and act intelligently upon it, and it is equally clear that he was an alien. We are then to consider whether the fact that Harpin was an alien is sufficient to avoid the verdict, and we think that it is not. In the case of *Queen* v. *Hepburn,* 7 Cranch, 297, it was objected that one of the jurors was not a resident of the county in which the cause was tried, and Chief Justice MARSHALL, speaking for the court, said "Whatever might have been the weight of this exception, if taken in time, the court cannot sustain it now, the exception ought to have been made before the juror was sworn." This language is fully applicable to the case under consideration. Parties have the right to interrogate persons who are called to sit as jurors, for the purpose of ascertaining their qualifications before they are sworn, and if this is not done the right to challenge is waived. *Hollingsworth* v. *Duane,* 4 Dall. 353 ; *Greenup* v. *Stoker,* 3 Gilm. 219.

We find no error in this record, and therefore the judgment of the district court is affirmed, with costs.

*Affirmed.*