SYLVESTER, APPELLANT, v. CRAIG, APPELLEE.

1. ERROR WHEN WAIVED.

The right to assign error upon a ruling sustaining a demurrer to an answer is waived by filing a new answer.

2. EVIDENCE OF CONVERSION.

The evidence in this case is sufficient to show a demand and also a conversion of the property.

3. MEASURE OF DAMAGES.

The measure of damages for the conversion of property is its value at the time of the conversion, with legal interest.

*Appeal from District Court of Arapahoe County.*

APPELLEE, William B. Craig, as plaintiff below, for a first cause of action alleges: That about March 1, 1885, plaintiff owned and was possessed of five hundred sheep of the value of two dollars each. That on said date, in the county of Arapahoe and state of Colorado, defendant unlawfully took, carried away, and converted said sheep and disposed of the same to his own use to plaintiff's damage in the sum of $1,000. A demand and refusal to return the sheep is also averred. The second cause of action is the same as the first, except in that it admits the possession of the defendant to have been legally acquired in the first instance.

The original answer contained four defenses and counterclaims. A demurrer to this answer having been sustained to all except the first defense, which consisted merely of a general denial, plaintiff took leave to amend generally. The amended answer consists, *first*, of a general denial; *second*, the following defense and counterclaim is set up. Between October, 1884, and commencement of suit, plaintiff bought of defendant 1362 sheep of various ages, kinds and quality. By the terms of the agreement, defendant was to run and care for such sheep till plaintiff disposed of them, for what such herding, care, etc., was worth. That the sheep sued for are a part of the 1362 sheep put in defendant's care, and this counterclaim is a part of and grew out of the same transaction. Defendant did run and care for the sheep of plaintiff, and the same was reasonably worth $487.87. That plaintiff and defendant had an accounting January 26, 1885, and $100 was found due defendant for herding the sheep to that time. That at the commencement of suit there was due defendant from plaintiff for running the sheep, $163.20, and interest on $100 of this amount from January, 1885, and interest on the remainder from commencement of suit. No part of above has been paid. Demand of judgment for $163.20 and interest.

Upon the issues thus joined upon the complaint, amended answer and replication, the cause was tried to the court

without a jury. This trial resulted in findings and judgment for plaintiff in the sum of $520.

Mr. S. H. BALLARD, for appellant.

Messrs. SULLIVAN & MAY, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The record in this case shows that on the 24th day of September, 1888, the plaintiff then being present, the court sustained a demurrer to the entire answer except the first defense, which consisted only of a general denial. It does not appear that appellant made any objection to the ruling of the court at the time. Upon the 8th day of the following month of October, an order was entered, however, by consent, giving defendant ten days in which to elect whether to stand by his answer or amend the same. The time was thereafter extended until the 26th day of the month, at which time defendant filed an amended answer. In this state of the record it is entirely unnecessary to examine the original pleadings for the purpose of ascertaining whether or not error was committed in the decision of the court upon the demurrers. The defendant waived his right to assign error upon the ruling of the court sustaining the demurrer to the first answer by filing a new answer. By answering over generally, he must be held to have abandoned the original answer. *Heaton v. Myers*, 4 Colo. 59.

By the next assignment of error the sufficiency of the evidence to establish a demand before the institution of this suit is challenged. An examination of the record discloses the following testimony on this point. Appellant admits that he sold 240 of the sheep in dispute to one Willard in December, 1885. Appellee, who was a witness for himself, testified:

"Q. Did you ever go to Mr. Sylvester about getting these sheep back, and if so, in whose presence? A. He came to the hotel once, and I told him it was about time he divided the

sheep up, and I would take nine and take care of them myself. That was along, I think, in March or April (1884). We bought them in October, and run them together from October to March. I had sent some feed out there, I believe, and I sent out herders and paid them, and he came down there once and I says, 'It is about time to divide up those sheep and I will take care of mine and you can do what you please with yours.'

"Q. What did he say? A. He said if I went out there to do anything with those sheep I would get myself into trouble.

"Q. Was that the end of that conversation? A. He was quite snarly and I could not get any satisfactory talk out of him about the sheep; and then he walked out.

"Q. Did you ever go then and demand the sheep of him? A. Not until about six months after that, I guess.

"Q. Where did you go then to demand them of him? A. I went with Mr. Osborn up to his house.

"Q. Where did he live at that time? A. In this house I sold him on Arapahoe street.

"Q. Where is that? A. Between twenty-fourth and twenty-fifth streets.

"Q. What took place at that interview? Was Mr. Osborn present? A. Yes; and Mr. Osborn did most of the talking. There was a mortgage on these sheep and he said it was due that day, and he came up to make Sylvester custodian of it or to take possession. He wanted to take possession without going out to the ranch, and he (Sylvester) said that he did not know that Craig had any sheep, and if he had any he had better go out in the country and find them.

"Q. Anything else? A. He talked pretty fast and loud and then his wife came up to me and said ' Won't you please go outside.' She gave me a polite hint and I walked out.

"Q. That mortgage, has that been released since? A. Yes, sir.

"Q. Did you have any other talk with Sylvester with regard to these sheep before you commenced this suit? A. He afterwards came to me and said he had sold them

sheep and asked if we could not get around and settle this thing."

This evidence is amply sufficient to show a demand and also a conversion of the property by appellant. *Turner v. Hahn*, 1 Colo. 23.

It is contended that the evidence does not show a right of recovery in the plaintiff. This assignment of error is based upon the evidence that the property was mortgaged to a third party and entirely overlooks the fact that there is evidence received without objection, already quoted in this opinion to show that such mortgage had been satisfied prior to suit.

We have carefully considered the evidence introduced at the trial and find the same amply sufficient to support the judgment. It is shown by the findings of the court that the evidence upon the counterclaim was considered and a due allowance made for the same. Owing to the loose manner in which the business was transacted and the accounts kept, it is quite possible, is admitted by the trial court, that absolute accuracy had not been arrived at, but we feel that substantial justice has been administered between the parties. We find no error prejudicial to appellant in the allowance of interest from June 15, 1886, to the date of trial, three years. The evidence shows that 240 of the sheep in question were sold by appellant in December, 1885, and the evidence is sufficient to support a finding that a conversion of the whole number dated from about that date. The measure of damages in trover being the value of the property converted at the time of its conversion, with legal interest upon the amount from such time, appellant's complaint of the amount of interest allowed as damages by the trial court is not well founded. *O. & G. S. & R. Co. v. Tabor*, 13 Colo. 41. The judgment will be

*Affirmed.*