JOSEPH RUFFATTI, RESPONDENT, v. SOCIÉTÉ AN-
ONYME DES MINES DE LEXINGTON, A COR-
PORATION, APPELLANT.[1]

1. ACTION ON CONTRACT.—JOINDER OF PARTIES NOT BOUND.—Where a mining company and its manager are both sued as principals for damages for breach of contract, the company has no

---

[1] Rehearing denied August 31, 1894.

ground to complain because the manager, who is not bound, is made a party to the suit, if in fact the company is bound by the contract.

2. PAROL MINING LEASE.—VALIDITY.—SUFFICIENCY OF EVIDENCE TO SUSTAIN FINDINGS OF JURY.—Evidence that L., manager of defendant company, discharged all the men in his employ, but allowed a large number of them to go to work in the mine under different kinds of contracts at or about the time plaintiff claims defendant made a parol lease to him, and that at defendant's direction he worked in a specified portion of the mine only; that his time was not kept; that he was paid no wages; that he did a large amount of dead-work before discovering ore, and then began stoping it out as rapidly as possible, is sufficient to warrant the jury in finding that plaintiff was put into exclusive possession of that portion of the mine as lessee, and that he was not there as an employé of the defendant.

3. ID.—WRONGFUL OUSTER.—DEFENSE.—It is no defense to an action by a lessee operating a portion of a mine under a parol mining lease to recover damages for wrongful ouster, that up to that time he had not put in sufficient timbers where no injury has occurred by reason thereof.

4. DISCRETION OF TRIAL COURT.—AMENDMENT TO PLEADINGS.—VERIFICATION.—It is no abuse of discretion for the trial court to allow an amended complaint to be amended by adding a verification, though neither the original nor the amended complaint was verified.

5. INSTRUCTIONS TO JURY.—PAROL LEASE TO WORK A MINE VALID.—Where the court instructed the jury as a matter of law that a parol lease to enter upon mineral lands or into a mine and mine the same for a specified share of the mineral raised for a definite time, and an entry under such lease and expenditure of labor and money in running drifts and other preparations for mining, gives to the lessee a valid subsisting interest which the lessor cannot terminate unless the lessee has forfeited, for some reason, his lease to work the mine. *Held*, no error.

6. ID.—TIME TO TAKE EXCEPTIONS.—PRACTICE.—The proper practice is for the attorneys to take specific exceptions to those parts of the court's charge objected to at the time the charge is given and before the jury have returned their verdict, so

that the court may correct the charge without the hazard of a new trial being incurred.

(No. 487.   Decided July 27, 1894.   37 P. R. 591.)

APPEAL from the District Court of the Third Judicial District.   Hon. George W. Bartch, *Judge.*

Action by Joseph Ruffatti against Société Anonyme Des Mines De Lexington and another to recover damages for breach of contract.   From a judgment for plaintiff against the company, it appeals.   *Affirmed.*   The opinion states the facts except the following:   There was an agreement entered into in open court between the counsel in the case and noted by the reporter, that either counsel might take any exceptions to the charge given or any part of it, or the refusal to give any charge requested, but no exceptions were afterwards extended upon the record.

*Messrs. Marshall & Royle,* for appellant.

No facts were in issue unless charged in the complaint, and no relief should have been granted upon proof of any contract not set up in the complaint, nor should the court or the jury have given any weight to the evidence of any contract which varied materially from the one set up in the complaint.   There is a material variance between the allegations and the proof.   The complaint set out the contract between the company and Lavagnino.   The jury found in favor of Lavagnino but against the company, but the plaintiff testifies that he knew no one in the contract but Lavagnino.   He answered that Lavagnino only owed him, and that the company did not owe him.   The complaint was not amended, nor was any application made to amend.   2 Comp. Laws 1888, §§ 3252, 3254; *Sling* v. *Insurance Co.,* 7 Utah, 443; *Stout* v. *Coffin,* 28 Cal. 67; *Mondran* v. *Goux,* 51 Cal. 151; *McCord* v.

*Seale,* 56 Cal. 264; *Burke* v. *Levy,* 68 Cal. 32; *Von Dratchenfels* v. *Doolittle,* 77 Cal. 296. Even if there was such a contract as that set out in the complaint, plaintiff cannot recover because he did not comply with its terms. The evidence all shows that the work was not done in a proper and miner-like manner. The court erred in permitting plaintiff, under a motion to amend the complaint, to add a verification thereto, when there was no verification or attempt at verification of the two preceding complaints; and also erred in overruling defendant's motion to strike out the verification. First, because the verification is no part of the complaint, and leave to amend the complaint would not authorize the addition of a verification. 1 Nash's Pleads. and Pr. 271; 1 Estes Plead. § 280; *Survivor* v. *McAvoy,* 6 How. Pr. 200.

*Mr. Richard B. Shepard, Mr. H. O. Shepard, Mr. J. M. Bowman* and *Mr. A. N. Cherry,* for respondent.

It is no abuse of discretion for the court to permit a pleading which has been filed without a verification to be afterwards verified. *Case* v. *Edson,* 40 Kan. 161; *Johnson* v. *Jones,* 2 Neb. 126; *Buell* v. *Beckwith,* 59 Cal. 480; *Angier* v. *Masterson,* 6 Cal. 61; *Arrington* v. *Tupper,* 10 Cal. 465; *Latimer* v. *Ryan,* 20 Cal. 629; *Thornton* v. *Borland,* 12 Cal. 439; *Robinson* v. *Smith,* 14 Cal. 254; *Gillan* v. *Hutchinson,* 16 Cal. 154. Another justification for Ruffatti bringing this action jointly and severally against both defendants is this: The Société Anonyme des Mines de Lexington, being a foreign corporation, organized in France, and Lavagnino being, by the evidence and pleadings, the admitted agent of it, the law presumes them both to be principals, and jointly liable. Story on Agency (9 ed.), §§ 268, 290; Addison on Con. (Abbott's ed.), 116; Chitty on Contracts (11 Am. ed.), 316; Wharton on Agency, § 791;

Dunlap's Paley on Agency (4 ed.), 373; *Rogers* v. *March,* 33 Me. 112; *McKenzie* v. *Nevins,* 22 Id. 138; 1 Am. & Eng. Enc. of Law, 404, *et seq.,* and notes; 2 Kent's Commentaries (12 ed.), § 631 and notes; *Vawter* v. *Baker,* 23 Ind. 63; *Kirkpatrick* v. *Stainer,* 22 Wend. 244. Agent and principal are both liable jointly and severally when principal is undisclosed but afterwards discovered. *Taintor* v. *Prendergast,* 3 Hill, 72; *Hopkins* v. *Lecontre,* 4 La. 641; *Hyde.* v. *Wolfe,* 4 Id. 234; *Beebe* v. *Roberts,* 12 Wend. 413; *Mechanic's Bank* v. *Bank,* 5 Whar. 326; Story on Agency (9 ed.), § 291. "In an action, on an alleged joint contract, the plaintiff may recover against one of the several defendants, who prove to be solely liable. In such cases, under the code, the rule of the common law does not apply." *Brumskill.* v. *James,* 11 N. Y. A. 294; Abbott's Trial Brief on Pleadings, § 1032; *Stedeker* v. *Bernard,* 102 N. Y. A. 327; *McIntosh* v. *Ensign,* 28 Id. 169; *Fieldin* v. *Lahens,* 6 Ab. Prac. Repts. N. S. 341; *Herrington* v. *Robertson,* 71 N. Y. A. 281; *Shain* v. *Forbes,* 82 Cal. 577. "If the difference is so slight that the adverse party has not been misled, but, in preparing to meet and contest the case as alleged, he is fully prepared to meet and oppose the one to be actually proved, that no effect whatever is produced by the variance; to impose any loss or penalty on the pleader would be arbitrary and technical." Pomeroy's Rem. & Rem. Rights (2 ed.), § 554; *Miller* v. *Kendig,* 55 Ia. 174; *Gaines* v. *U. T. & I. Co.,* 28 O. St. 418; *Cody* v. *Bemis,* 40 Wis. 666; *Flanders* v. *Cottrell,* 36 Id. 564; *Giffert* v. *West,* 37 Id. 115; *Chunot* v. *Larsen,* 43 Id. 536; *Russell & Co.* v. *Loomis,* 43 Id. 545; *Ryan* v. *S. Fire Ins. Co.,* 46 Id. 671; *Miller* v. *Bergenthall,* 50 Id. 474; *City of Huntington* v. *Mendenhall,* 73 Ind. 460. A mere parol license, coupled with an interest growing out of expenditures of money or labor, is not revocable at the pleasure of the licensor. *Silsby* v. *Trotter,* 29 N. J. Eq. 228; *Bush* v. *Sullivan,* 3 Green. (Ia.) 344;

*Iron Co.* v. *Wright,* 32 N. J. Eq. 248; *Kamphouse* v. *Gaff-ner,* 73 Ill. 453; *Dark* v. *Johnson,* 55 Pa. St. 164; 15 Am. and Eng. Enc. of Law, 600; Bambridge on Mines, ed. 1841, pp. 167, 168. "The entire charge of the court must be considered together, each part as qualified by other parts; and if, when so considered, it is substantially correct, it is sufficient." *People* v. *Oleson,* 4 Utah, 413; *Griffith* v. *Clift,* Id. 462.

SMITH, J.:

This is an action commenced by the plaintiff to recover the sum of $15,998.66 from the defendants. The jury returned a verdict for $5,000 against the corporation commonly known as the Lexington Mining Company, its exact title being the Société Anonyme des Mines de Lexington, a corporation organized under the laws of France. The action is upon a contract for damages arising from a breach of it by the defendants. In substance the complaint is that in December, 1890, the plaintiff and the defendants, to-wit, the mining company and one Lavagnino, made a contract by which the plaintiff leased and undertook to work certain mining grounds in a portion of what is known as the "Old Telegraph Mine," in Salt Lake county; that the lease was for the period of three months, expiring on the 10th day of March, 1891; that by the terms of the lease the plaintiff should work the portion of the mine assigned to him for that purpose, should mine and remove the ore therefrom at his own cost, and deliver the same, when thus mined, to the defendants at the usual place in said mine for shipment and sale; that the defendants were to ship and sell the ore, after thus mined and delivered, without any cost or charge to the plaintiff, and out of the proceeds of the sale of the ore was first to be paid the cost of shipping and sampling the

same, and the net proceeds were to be divided, one-third to the defendants, and two-thirds to the plaintiff.

It is also claimed that under this lease the plaintiff worked for 58 days, and discovered a large and rich body of ore, and that he had extracted ore, and delivered to the defendants, of the value of $10,000, after deducting the expenses of shipping and sampling the same, and that he had in sight, ready to be mined and broken down, on the day when he was ousted, to-wit, the fifty-eighth day of his lease, about 300 tons of ore, of the value of $100 per ton net, and that within the remaining twenty-eight days of his lease the plaintiff could have mined and removed from said mine 140 tons of such ore; that his profit on such 140 tons would have been $9,332, or two-thirds of the net value of the same. The suit is to recover two-thirds of the $10,000 worth of ore which he alleges he had mined and delivered to the defendants, and two-thirds of the profit he would have made if he had been permitted to work during the remainder of his term. It is also alleged that without cause he was ousted wrongfully by the defendants on the fifty-eighth day of the term. In the answer it was alleged that the defendant Lavagnino was merely agent or manager for the defendant the Lexington Mining Company, and this appeared to be established by the proof, and the jury rendered their verdict against one, only, of the defendants, to-wit, the mining company. The case was tried to a jury, the defendants having denied the allegations of the complaint, and the jury rendered a verdict, as above stated, against the mining company alone, for $5,000. Motion for a new trial was made and overruled, and an appeal taken from the judgment and order denying a new trial.

The first matter complained of by the appellant is that the evidence is insufficient to justify the verdict. Several

particulars are specified. They may be grouped briefly as follows: (1) There is no evidence to show that the two defendants were the owners of the mine; (2) there is no evidence to show that as such owners they made a lease to the plaintiff; (3) there is no evidence to show that the defendants, or either of them, made a lease of the mine, or any part of it, to the plaintiff; (4) that defendants, or either of them, put plaintiff in the possession thereof; (5) there is no evidence to show that plaintiff did his work in a proper or minerlike manner; and (6) there is no evidence to show that plaintiff confined himself to any specified part of the mine.

As to the first specification, we do not deem it necessary to enter into a discussion. Plaintiff sued the mining company and Lavagnino, and alleged that he had a contract with them. It appeared that his contract was actually made, if made at all, with Lavagnino, and it also appeared quite clearly on the trial that Lavagnino was merely an agent for the other defendant. In suit upon a contract, where the evidence warrants it, we think it is universally held that a recovery may be had against one or the other, or both, of the defendants who are sued upon the contract. It is no ground of complaint on the part of the mining company, if it, in fact, was bound by the contract, that the plaintiff saw fit to sue some one else who was not bound, in connection with it, to recover damages for a breach.

The second specification of insufficiency—that there is no evidence that the owner made a lease to the plaintiff— is one which was much discussed at the hearing in this court. An examination of the evidence shows that the testimony is squarely conflicting. The plaintiff testified fully and completely to a contract substantially as alleged in his complaint. Lavagnino admitted on his examination that he put the plaintiff to work; that he did not make

any written contract with him, and he made no verbal contract that he could work in any part of the mine, or any specified time. He does admit that there was an agreement of some kind between himself and the plaintiff, Ruffatti, by which the plaintiff was to go to work in the mine without wages, and upon some kind of an arrangement, which he does not very clearly specify, by which plaintiff was to get his pay for work out of the ore that he extracted. He claims that he was to have the right to discharge plaintiff at any time, so that he could have the mine absolutely free from any engagement with anybody. It seems that prior to December, 1890, Lavagnino, as manager for the mining company, had been operating the mine in a regular way. At about that time he discharged all the men in his employ, but immediately allowed a large number of them to go to work under different kinds of contracts, which Lavagnino terms "tribute contracts." Among others who had been at work for the company was the plaintiff, and he took a contract. About this there seems to be no question. As to exactly the nature of it the testimony is squarely conflicting. The jury unquestionably believed the plaintiff, and, in the light of all the testimony, we would not be warranted in saying that they did not do right in believing him in preference to the witnesses against him.

The observations made upon this specification answer the third, which is that there is no evidence to show that either of the parties made a lease of the mine or of any part of it.

The fourth specification is that there is no evidence to show that plaintiff was put in possession of any part of the mine. Now, upon this the testimony is undisputed that the plaintiff took possession of a certain portion of the mine, went to work and worked 58 days in that particular place, discovered an ore body after about 16 to 20

days' work, and from that time on to the time he was turned out was busily engaged, both by himself and other men working with him, in extracting ore from this ore body. All of this appears to have been known at least to Lavagnino, and it is not denied by him, and the plaintiff swears that Lavagnino pointed out to him just where he should go to work, at a point described by him as running from the switch up to the raise that the company had made in the old work that was there. This description seems to have been understood by all the witnesses, and the locality seems to be sufficiently fixed by the description. It appears that a good many other men who had been formerly employed in the mine were given leases in different portions of the mine; for instance, it appears that one Pronatt had a lease in the same way in the "Gallery," so-called, and one Ozella had a lease on the "Grecian Bend," and others had leases at different places. After the plaintiff had been at work for about 20 days, doing dead work,—that is running through barren rock,—he discovered a body of ore of considerable extent and very rich. After he had been working upon this ore for a period of some 58 days, including the time spent doing dead work, Lavagnino came to him, and told him he had made money enough, and that he must quit, and did compel him to quit,—both him and the men who were employed by him. Lavagnino took possession of the ore he had already mined, and also of that that was yet standing in the mine. The plaintiff received no benefit at all, and has received absolutely nothing for the work which he did there, either by himself or the men who worked for him. From these facts it would appear that the jury were warranted in concluding that the plaintiff was put into the exclusive possession of a portion of the mine, and that he was not there merely as an employé of the defendant. His time was not kept by anybody. He was paid wages by no one. He

worked in a specific place, and in only one place. He did a large amount of dead work before he made any discovery, and, when he discovered the ore body, began stoping it out as rapidly as possible. All this would indicate that he was in possession as lessee, and not as a mere laborer under the defendant; and in this particular the evidence was sufficient to sustain the verdict.

The fifth specification of the insufficiency of the evidence is that there is no proof that the plaintiff did his work in a proper or miner-like manner. It may be said, in answer to this specification, that there is as much evidence that the work was done in a proper manner as that it was done in an improper manner. The exact condition of the ground in charge of the plaintiff is given in the testimony, and there is no testimony of any particularly skilled miner, or persons acquainted with that business, as to any improper mining. It was claimed by Lavagnino that there was not sufficient timber in that portion of the mine where plaintiff was working, and that he should have put in more timber. This was denied by plaintiff; but in any event it is evident that plaintiff was proceeding with the work at the time he was stopped, and up to that time no injury had occurred because of the lack of timbers, and, the defendants having wrongfully ousted him, we would not be warranted in holding that he forfeited all of his rights under this lease simply because up to that time he had not put in sufficient timbers, even if it be admitted that the mine required more timber. This seems to have been the chief cause of complaint, as we gather from the testimony on the trial. We are of the opinion that in this particular the facts proven were sufficient to warrant the verdict.

The sixth specification does not require any discussion, because we have already stated that the plaintiff, after he discovered the body of ore, does not appear to have worked

anywhere else, and it would have been very remarkable indeed if he had left it after discovering it, and gone into some other portion of the mine to work.

The first error of law complained of was that the court permitted the plaintiff to verify the amended complaint, and the original complaint was not verified. We think the trial court had discretion to allow the amended complaint to be verified, and that there was no abuse of discretion in permitting it. See, upon this question, the cases of *Railroad Co.* v. *Wilson*, 10 Kan. 112; *Case* v. *Edson*, 40 Kan. 161, 19 Pac. 635; *Johnson* v. *Jones*, 2 Neb. 126; *Buell* v. *Beckwith*, 59 Cal. 480. We think there was no error in permitting the amended complaint to be verified.

Several errors are assigned upon the giving of the instructions, no less than 10 errors being assigned in regard to this matter. The charge of the court we have examined with care, and we feel inclined to insert it bodily in this opinion were it not for the length of the charge. The substance of the entire charge, however, is embraced in the eighth subdivision of it, which is as follows: "The court instructs the jury, as a matter of law, that a parol lease to enter upon mineral land or into a mine, and mine the same for a specified share of the mineral raised for a definite time, and an entry under such lease, and expenditure of labor and money in running drifts and other preparations for mining, under said lease, gives to the lessee a valid, subsisting interest in the real estate which the lessor cannot terminate, unless said lessee has forfeited, for some reason, his lease to work said mine." The other instructions, which go at great length into matters of detail, really hinge upon the propositions stated in this eighth subdivision. The jury were told, in effect, that a verbal lease for three months was valid; that if the plaintiff entered under it, expended

labor and money, and took out ore and. exposed other ore which he might have taken out, and was then wrongfully dispossessed by the defendants, and the ore which he had raised was appropriated by the defendants, and he was prevented from extracting any more, then he was entitled to recover the proportion which, according to the contract, would belong to him, of the ore which he had actually raised, and any damages which he might have sustained by reason of the termination of his lease before his full term had expired. This is the substance of the entire charge, and a most careful examination has convinced us that it was correct as a statement of the law applicable to this case. The only objection that can possibly be found to it is that it rather inclined to emphasize the testimony in favor of the defendants, rather than that in favor of the plaintiff.

There seems to have been no exception taken, at the time of the trial, to any part of the charge, but there was a stipulation, verbally made in open court, that exceptions might be taken afterwards to any part of the charge given, or the refusal to give any part requested. We are very doubtful of the propriety of this practice in any case. It is due to the trial court to call its attention to·any misstatement of the law or inaccuracy of expression in giving instructions to a jury at the time they are given, and before the jury have returned their verdict, so that the court may have an opportunity to correct them without the hazard of a new trial being incurred. It is·not the parties alone who are interested in having the verdict final in the case. It is against public policy to have continued rehearing in the same action. Frequently slight errors or inaccuracies may occur in the charge of the court to the jury, which, if mentioned at the time, and the court's attention directed to them, would be corrected readily by the trial court. Every one of the objections to the charge in this

case are of this character. We think the better practice would be to require of the attorneys that they specify what objections they have to the charge of the court, as given, at the time the charge is given. See *Black* v. *City of Lewiston* (Idaho), 13 Pac. 80, and the cases there cited.

Upon the whole record in this case we are satisfied that the finding of the jury was a just and righteous one, and that the trial was had according to the forms of law, and without any material error prejudicial to the defendants. It appears reasonably clear from the testimony in the record that the plaintiff was simply a fortunate lessee, who by good luck discovered a rich body of ore, and that when the defendant company, through its manager, ascertained this fact, it immediately proceeded to deprive him of his possession of the mining ground, and of any opportunity to extract more ore, and also proceeded to appropriate the ore he had actually extracted, and refused to pay him anything whatever for the labor he had done, or on account of the ore he had extracted. Under such circumstances it is not surprising that an average jury should find the defendant responsible for the wrong it had done the plaintiff, and they assessed the damages according to what the proof seemed to warrant; and in fact we may say, in passing, there is no complaint in the argument of counsel, or in the brief filed in this court, or in the specification of errors, that the verdict is excessive. The judgment is affirmed, with costs to the respondent.

MERRITT, C. J., and MINER, J., concur.