[No. 4723.]

THE ISABELLA GOLD MINING COMPANY V. GLENN ET AL.

1.  **Landlord and Tenant—Trespass by Landlord—Evidence, Actual or Constructive.**

A mere trespass by a landlord does not amount to an eviction, though it may be accompanied by such acts, and committed in such circumstances, as to be equivalent thereto.  An eviction may be actual or constructive, and any act of the lessor by which his tenant is deprived of the enjoyment of the whole, or a material part, of the demised premises, or which shows an intent upon the part of the lessor permanently to deprive, or seriously to obstruct or interfere with, the tenant's quiet and peaceful enjoyment thereof, amounts to an eviction.—P. 168.

2.  **Practice in Civil Action—Defenses—Waiver or Release Specially Pleaded.**

A waiver or release, to be relied upon as a defense, must be specially pleaded.—P. 169.

3.  **Practice in Civil Actions—Landlord and Tenant—Damages for Wrongful Eviction—Waiver of Damages as Defense.**

In an action to recover damages for the breach of a covenant for quiet enjoyment, a clause in the lease, by which plaintiff waives all claims for damages for trespass against adjoining lessees, does not relieve the landlord from liability for an eviction caused by the wrongful acts of such lessees acting in collusion with him.—P. 169.

4.  **Mines and Mining—Leases—Eviction—Damages—Burden of Proof.**

In an action to recover damages for the breach of a covenant for quiet enjoyment, the eviction being proved and the extraction of large bodies of ore by defendant and its other tenants being shown, the burden was upon defendant to prove the amount and value of the ores which it and its lessees removed during the term of plaintiff's lease.—P. 171.

5.  **Mines and Mining—Leases—Description of Veins—Instructions.**

A mining lease demised "all the veins outcropping within and belonging to the southeasterly 500 feet of the C. lode mining claim."  Held, that an instruction that the demised premises included all veins which outcrop within, and also all other veins which for any reason belong to, the southeasterly 500 feet of the C. lode, and that although some particular vein within the surface lines of the C. location does not outcrop on the surface, yet if the evidence showed that the top or apex thereof was with-

in its exterior lines, then the same belonged to the demised premises, and plaintiffs were entitled to mine the same, was proper.—P. 171.

6. **Practice in Civil Actions—Mines and Mining—Landlord and Tenant—Withholding Evidence—Presumptions.**

Where, in an action on a mining lease, there is an uncertainty about the description, the construction should be strongly against the lessor; and if there is any ambiguity in the particular description, the failure of the defendant to produce its office map, referred to in the general description of the lease, warrants the presumption that the map would show that the intention of the parties coincided with the court's interpretation. —P. 171.

7. **Appellate Practice—Points First Raised in Reply Brief— Waiver of Objection.**

The appellate court will not consider a question raised for the first time in the reply brief, except leave of the court is first obtained; nor will the fact that appellees filed a brief; in which they first object to such consideration and then cite authorities on the point, constitute a waiver by them; but if it did, this court does not approve of such practice, and for its own protection will not permit a departure from an established rule except for good cause shown.—P. 172.

8. **Mines and Mining—Leases—Landlord and Tenant—Eviction —Damages—Interest.**

In an action to recover damages for the breach of a covenant for quiet enjoyment, the eviction being proved and the extraction of ore by defendant being shown, it is just to allow, in addition to the net value of the ore, additional compensation equivalent to legal interest. Dictum.—P. 173.

*Appeal from the District Court of Teller County.
Hon. William P. Seeds, Judge.*

Action by Lee Glenn, Frank Hart, Gay Glenn and Al Pleasant against The Isabella Gold Mining Company. From a judgment for plaintiffs, defendant appeals.                    *Affirmed.*

Messrs. Hall, Babbitt & Thayer, Mr. John K. Vanatta, Mr. Tyson S. Dines and Messrs. Dines Whitted & Dines, for appellant.

Mr. C. W. Franklin, for appellees.

Mr. Justice Campbell delivered the opinion of the court:

At the close of plaintiffs' case the court overruled defendant's motion for a nonsuit, and, with appropriate instructions, submitted the case to the jury upon plaintiffs' evidence alone. A verdict was returned against the defendant company, and from the judgment entered upon it defendant appeals.

The salient facts are that defendant executed a mining lease to certain persons, whose rights plaintiffs acquired, for a period of one year, which granted to the lessees the right to enter upon the premises and extract and ship ores therefrom. The premises demised were described generally as "the property of said company shown and designated upon the lease map on file in the office of said company as block No. S Comet, and more particularly described as follows, to wit: All the veins outcropping within and belonging to the southeasterly 500 feet of the Comet lode mining claim." The lease contained the following clause: "That said lessees shall have the privilege, under the written order of the agents of said company, of examining the blocks of ground adjoining the said demised premises, in consideration therefor waiving all claims for damages against lessees of such adjoining blocks for trespass."

The evidence tended to show that plaintiffs were let into the demised premises, and that they began to prospect and take out ore from veins situate within its limits, but before the expiration of the term of their lease, defendant company, by its manager and through its lessees on the adjoining Emma No. 1 mining claim, interfered with, and obstructed plaintiffs in their mining operations in portions of veins where rich and valuable ores were encountered, and the plaintiffs, after working for some time in other

parts of the claim in which no profitable ores were discovered, surrendered the lease under protest against such unlawful acts of the defendant and its conniving lessees. Thereafter this action was brought by the plaintiffs.

The parties are not in accord as to the nature of the action. Plaintiffs say that it is one to recover damages for the breach of the covenant for quiet enjoyment which every lease implies, while defendant says that it is an action merely to recover damages for a trespass committed by defendant's lessees of an adjoining block, which defendant authorized and approved. Without summarizing the allegations of the complaint, it is sufficient to say that the action is clearly one for breach of the covenant for quiet enjoyment. The plaintiffs so denominated the action, and the defendant in its answer denies that it evicted, or intended to evict, the plaintiffs from the demised premises.

There is a marked distinction between a trespass and eviction. A mere trespass does not amount to an eviction, though it may be accompanied by such acts, and committed in such circumstances, as to be equivalent thereto. An eviction may be actual or constructive, and any act of the lessor by which his tenant is deprived of the enjoyment of the whole, or a material part, of the demised premises, or which shows an intent upon the part of the lessor permanently to deprive, or seriously to obstruct or interfere with, the tenant's quiet and peaceable enjoyment thereof, amounts in law to an eviction.—*Hyman v. Jockey Club Co.*, 9 Colo. App. 299, 305; 1 McAdam's Landlord and Tenant (3d ed.), § 403.

The defendant's contention that one cannot be evicted from premises of which he never had possession is not applicable to the facts of this case. The evidence strongly tends to show that the lessees en-

tered into possession of the premises, from which they were excluded by the lessor, and the latter intended such exclusion to be permanent, its object being not only to take away, but also to prevent the lessees regaining, possession of the only portions of the veins which it was profitable to work. The action, therefore, being one on the covenant for quiet enjoyment, and, in our judgment, an eviction having been established, we proceed to consider other objections argued upon this appeal.

Defendant says that since by the express provision of the clause of the lease above quoted plaintiffs waived all claims for damages against lessees of adjoining blocks for trespass, they cannot recover in this action, because a release of one tort-feasor is a release of all wrong-doers. Whether this clause constitutes a waiver or release is not important. There is nothing in defendant's contention with respect to this point for several reasons. Whether it be a waiver or a release, and whatever be its true meaning, if defendant wished to rely upon it, it should have been specially pleaded, but it was not. Besides, this is not an action sounding in tort for a mere trespass. It is an action, as we have already determined, to recover damages for a wrongful eviction, and the clause has no application to an action for breach by the lessor of its covenant for quiet enjoyment, without which the lease would be valueless.—28 Am. & Eng. Enc. of Law (1st ed.) 536; 18 Enc. Pl. & Pr. 89, 90; *Alden v. Carpenter,* 7 Colo. 87, 91; *Little Pittsburg M. Co. v. Little Chief M. Co.,* 11 Colo. 223, 243; *Trotter v. Mut. Reserve Assn.,* 9 So. Dak. 596; *Home Ins. Co. v. Duke,* 43 Ind. 418, 421; *San Pedro L. Co. v. Reynolds,* 121 Cal. 74, 91.

Another objection urged by appellant is that "there was no evidence of the measure of damages." No complaint is made that the court improperly in-

structed the jury as to the rule for computing the amount of damages. By this assignment we understand defendant means that there was not sufficient evidence to show the quantity or value of the ores which plaintiffs could and would have mined and marketed from the demised premises within the limits of their lease. For the purpose of proving that they could and would have mined, during their term, at least as much ore as defendant and its lessees on the Emma No. 1 wrongfully took from the Comet during such period of time, and as tending to show the amount of their damages, or at least one element thereof, plaintiffs produced evidence that, under defendant's order, its lessees on the adjoining Emma No. 1, mined and marketed ores from the premises demised to plaintiffs in value largely in excess of the amount of the verdict. There was not, in every respect, a detailed and exact showing as to the amount, or value, of what came from the Comet and what, if any, from the Emma No. 1, or just what was mined from the former during the term of plaintiffs' lease. Defendant says there was no evidence at all that any part of such ores came from the premises let to plaintiffs, and none, on which any satisfactory computation could be made, showing the amount taken during their term. In this claim defendant is mistaken, though the evidence be not so explicit as it might be.

However that may be, it is entirely clear that if there is any uncertainty, either as to the amount or value of the ores which plaintiffs would and could have mined and sold during the term of their lease, this ambiguity could easily have been removed by evidence which was wholly under the control, and within the power, of the defendant company to produce at the trial. In such a case as this, every reasonable intendment in support of a verdict for a plaintiff will be made. A case quite in point is *Lit-*

*tle Pittsburg M. Co., supra.* Without further discussion, this contention of the defendant may be disposed of by saying that the verdict of the jury is sustained by the evidence. But if the evidence were more indefinite than it is, we would not disturb the verdict because, in the circumstances of this case—the eviction being proved and the extraction of large bodies of ores by defendant and its other tenants being shown—the burden was upon defendant to prove the amount and value of the ores which it and its lessees removed during the term of the plaintiffs' lease, and it entirely failed to discharge that duty.

The court instructed the jury that the demised premises included all veins which outcrop within, and also all other veins which for any reason belong to, the southeasterly 500 feet of the Comet lode, and that although some particular vein within the surface lines of the Comet location does not outcrop on the surface, yet if the evidence showed that the top or apex thereof was within its exterior lines, then the same belonged to the demised premises, and plaintiffs were entitled to mine the same. Defendant's construction of the language of description is that not only must the veins in question belong to the particular 500 feet of the Comet lode, but must also outcrop therein—in other words, that the veins which plaintiffs were entitled to work must have both the characteristics of being outcropping veins and belonging to the Comet claim, that is, veins which apex in the Comet. We think the court was clearly right in its instruction as to what veins plaintiffs were entitled to mine. If, however, there is any uncertainty about the description, the construction should be strongly against the lessor; and if there is any ambiguity in the particular description, the failure of defendant to produce its office map, referred to in the

general description of the lease, warrants the presumption that the map would show that the intention of the parties coincided with the court's interpretation.—4 Am. & Eng. Enc. of Law 800, 801, note 3; *Esty v. Baker,* 50 Me. 325.

In the first brief of appellant no argument was made by its counsel that the court erred in instructing the jury that, to the net value of the ores which plaintiffs would and could have removed from the premises within the time limit of the lease, they might add an additional sum equivalent to legal interest on such net value from the date of the expiration of the lease until the day of trial. In its reply brief for the first time appellant discusses this question. It does not comport with good practice for the court to consider points raised by the appellant or plaintiff in error for the first time in his reply brief, certainly unless good cause be shown therefor, and leave of court be obtained.—2 Cyc. Law & Pro. 1018; *Mich. Sanit., etc., v. City of Battle Creek,* 101 N. W. 855; *Kahn v. Wilson,* 120 Cal. 643; *Millers' F. I. Co. v. People,* 170 Ill. 477; *State Security Bank v. Burns,* 96 N. W. 909.

Appellant, however, says that the objection of appellees to the consideration by the court of this question has been waived because on the oral argument they asked leave to file a brief upon the question of interest. Appellees have filed a brief in which they object first to such consideration, and then cite authorities which uphold the instruction. This does not constitute a waiver by appellees, but if it did, the court does not approve of such a practice as that followed by appellant, and for its own protection will not permit a departure from an established practice except for good cause shown. The appellant has not given any excuse why it omitted to discuss this point in its opening brief.

In thus disposing of the point, we must not be understood as, even by implication, questioning the correctness of the instruction. From previous decisions of this and other courts in similar, or analogous, cases, it would appear that full compensation cannot be given to the evicted tenants merely by awarding to them as damages the net value of ores which they would have extracted had it not been for the lessor's wrong. *The Little Pittsburg case, supra,* enforces this doctrine.

In *New Dunderberg M. Co. v. Old,* 97 Fed. 150, Judge Sanborn says that when property or money has been wrongfully appropriated or converted by a defendant, interest should be given as damages to compensate the plaintiff for the loss of the use of the proceeds of his property or of his funds, and he further says that it is not indispensable that there be a statute giving express authority for such an award, and to this proposition cites, among other authorities, *Refining Co. v. Tabor,* 13 Colo. 41; *Machette v. Wanless,* 2 Colo. 169; *Sutton v. Dana,* 15 Colo. 98; *Perkins v. Marrs,* 15 Colo. 262; *Sylvester v. Craig,* 18 Colo. 44, 48; and *Arkansas Cattle Co. v. Mann,* 130 U. S. 69, 79.

By applying this doctrine to the present case, we might say, if the question were properly before us, that it is just to allow, in addition to the net value of the ore, additional compensation equivalent to legal interest, for, had not defendant wrongfully evicted plaintiffs, they certainly would have had in hand, if the verdict of the jury is right, as we believe it is, the net value of the ore upon the expiration of their lease. The defendant detained this sum from them, and plaintiffs thereby lost the use of it. It was only right, as Judge Sanborn says in the case referred to, that plaintiffs should recover damages

equivalent to legal interest during the time when the defendant has the benefit of the sum.

Our examination of the record satisfies us that the plaintiffs entered into possession of the demised premises; they discovered or encountered valuable bodies of ore therein which they began to extract and ship; they were unlawfully evicted from the demised premises; they could and would have mined ores at least of the value found by the jury had it not been for such eviction. Plaintiffs are not bound by the supposed release of claims for damages by the trespass of lessees in adjoining blocks, and whatever of uncertainty there is in the proofs of plaintiffs' cause of action results from the failure of the defendant to make it clear and definite, which it was its duty to do.

Considering the record, the judgment is clearly right, and it should be affirmed.      *Affirmed.*

Chief Justice Gabbert and Mr. Justice Steele concur.