KJELSBERG v. CHILBERG.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1910.)

No. 1,716.

1. MINES AND MINERALS (§ 57*)—CONTRACT TO LEASE—EVIDENCE.
   In an action for breach of a contract to lease plaintiff the right to operate a mining claim on a royalty, evidence that defendant stated to plaintiff, that he would make out a lease of the claim in question, that the terms of the royalty would be 40 per cent., and that the lease was to commence on September 1, 1905, and run to the middle of June, 1906, was sufficient evidence as to the terms of the contract.
   [Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 57.*]

2. TRIAL (§ 296*)—INSTRUCTIONS—PEREMPTORY INSTRUCTIONS—CONSTRUCTION.
   In an action for breach of a contract to lease a mine, the court charged that if the jury found from the evidence that the agreement was made and that defendant leased the premises to another, and if plaintiff had been given a lease would have mined the ground at a profit, then the jury should find for plaintiff for some amount, was not error; the court having presented the issue whether defendant agreed to make the lease, and having elsewhere instructed that, if the jury found there was a breach of such agreement, plaintiff was at least entitled to nominal damages.
   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–716; Dec. Dig. § 296.*]

3. EVIDENCE (§ 142*)—SIMILAR FACTS AND TRANSACTIONS—DAMAGES.
   In an action for breach of a contract to lease a mine, evidence of the profits made under a like lease of the same property to others during the same period, in connection with evidence that plaintiff would have worked the premises practically in the same manner, had the lease been executed to him, was competent on the issue of damages.
   [Ed. Note.—For other cases, see Evidence, Dec. Dig. § 142.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Second Division of the District of Alaska.

Action by B. A. Chilberg against Magnus Kjelsberg. Judgment for plaintiff, and defendant brings error. Affirmed.

Ira D. Orton, Campbell, Metson, Drew, Oatman & MacKenzie, and E. H. Ryan, for plaintiff in error.

Albert H. Elliot and Wm. H. Packwood, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge. The defendant in error brought an action against the plaintiff in error to recover damages for breach of an agreement to lease to the defendant in error a certain placer mining claim belonging to the plaintiff in error. The complaint alleged that the parties to the contract had been copartners in business at Nome, Alaska; that they dissolved their partnership, and in part consideration of the surrender by the defendant in error of his interest in the copartnership business the plaintiff in error agreed to execute to him a lease of the mining claim for one year upon a royalty of 40 per cent.; that the plaintiff in error failed and refused to execute the lease, and instead thereof executed a lease of the claim to another, so that the defendant in error was prevented from working the said claim; that the defendant in error could and would have extracted from the ground, over and above the royalty to be paid to the plaintiff in error and the necessary expenses of working the mine, gold dust of the value of $50,000. For that sum he demanded judgment. On the trial before a jury, verdict was returned for the defendant in error in the sum of $2,000, for which judgment was rendered.

The plaintiff in error contends that there was no contract proven by the record which would entitle the defendant in error to damages for its breach. There was no motion for an instructed verdict. There was no testimony to contradict in any way the testimony of the defendant in error as to the terms of the contract. He testified that the plaintiff in error said, "I will make you out a lease of the Metson Bench;" that the terms were that the royalty was to be 40 per cent., and that the lease was to commence on the 1st of September, 1905, and run to the middle of June, 1906. This was sufficient evidence of the terms of the lease. Under the instructions of the court, the jury found that the contract to give the lease had been made as alleged.

It is assigned as error that the court gave the following instruction:

"You are instructed in this case to find for the plaintiff for some amount, that amount to be filled in in the form of verdict which I send out with you to your jury room."

It is contended that, since the answer of the plaintiff in error put in issue the allegation that a contract was made for a lease, it was error to give such an instruction, notwithstanding that the plaintiff in error had made no denial of the testimony of the defendant in error. Without passing on the question whether it would have been error to give such an instruction, we are of the opinion that the court did not

intend to, and did not, so instruct. The language above quoted follows a clause in the instructions in which the court told the jury that if they found from the evidence that the agreement was made, and that the plaintiff in error leased the premises to another, and that the defendant in error, if he had been given the lease, would have mined the grounds at a profit, "you are instructed in this case [that is to say, in this event] to find for the plaintiff for some amount," etc. The court distinctly presented to the jury the issue whether the defendant agreed with the plaintiff to make and execute to him a lease, and elsewhere instructed the jury that if they found from the preponderance of the evidence that the plaintiff in error agreed with the defendant in error to make and execute to him a lease, and then failed to make the lease, and made a lease of the same ground to another, that it was a breach of the agreement, and the defendant in error "would be entitled to at least nominal damages, as indemnity for the breach or violation of such oral contract."

Error is assigned to the instructions to the jury in which they were told in substance that the rule of law is that where the lessor has title, and for any reason refuses to lease the premises agreed upon, he shall respond in damages and make good to the lessee whatever he may have lost by reason of his bargain, and that the lessee would be entitled to such profits as would have been derived from the premises, for the full period of the term for which the lease was to be made, and that proof of the profits may be made by showing what profits were made under a like lease of the same property to other parties, if the proof further shows that the party who was to have the lease would have worked the premises practically in the same manner as the persons did who worked the same. We find no error in the instructions so given. In the case of a wrongful breach of a contract to lease houses or land, the measure of damage to the plaintiff is easy of ascertainment. It is the reasonable value of his contract, and not the profits which he would have made if the agreement had been carried out. It is well settled that where one contracts to grant a lease, well knowing that he has no title, or where he puts it out of his power to grant the lease by giving a lease to a third person, the other party to the contract may recover as damages the value of his bargain. Robinson v. Harman, 1 Exch. 850; Ford v. Tiley, 6 B. & C. 325. And other damages, which are the direct and natural consequences of the breach, may be recovered in addition to the value of the bargain. Driggs v. Dwight, 17 Wend. (N. Y.) 71, 31 Am. Dec. 283; Wolf v. Studebaker, 65 Pa. 459; Hall v. Horton, 79 Iowa, 352, 44 N. W. 569; Hanslip v. Padwick, 5 Exch. 615.

More analogous to the case at bar, however, are cases of croppers' leases, where land is let or agreed to be let to be farmed on shares. In such cases the profits which the lessee might have made are often taken into consideration in determining the measure of his damages for a breach of the contract. Depew v. Ketchum, 75 Hun, 227, 27 N. Y. Supp. 8; Taylor v. Bradley, 39 N. Y. 129, 100 Am. Dec. 415; Bowers v. Graves & Vinton Co., 8 S. D. 385, 66 N. W. 931; Rice v. Whitmore, 74 Cal. 619, 16 Pac. 501, 5 Am. St. Rep. 479. In Depew v. Ketchum it was held that the measure of the lessee's damages was the

value of his term surrendered, based upon the capacity of the farm to yield a profit to one working under the contract. In Taylor v. Bradley the court said:

"To my mind the only rule which can be prescribed, and the only rule which will do justice to the parties, is that the plaintiff is entitled to the value of his contract. He was entitled to its performance. It is broken. He is deprived of his adventure. What was this opportunity, which the contract had apparently secured to him, worth? To reap the benefit of it, he must incur expense, submit to labor and appropriation of his stock. His damages are what he lost by being deprived of his chance of profit."

See, also, Dickinson v. Hart, 142 N. Y. 183, 36 N. E. 801.

But a contract to lease an undeveloped mining claim stands upon still different ground. A lease of a mine is a grant of the corpus of the property. It confers the right to take out a part or all of the value of the property, and a lease upon a fixed royalty is in some respects a joint venture for the benefit of both the lessor and the lessee. It may be said that a lease of an undeveloped placer mine in the Nome district ordinarily has no market value, because it cannot be known with any degree of certainty what will be found in the ground. The lessee takes his chances. He may operate it at a loss, or he may operate it at a great profit, to himself and to his lessor. If one method of estimating damages is shown to be more definite and certain than others, it should be adopted. The only way of proving the value of such a lease with any degree of certainty is by proving what was actually taken out of the mine, and if the proof is, as it was in this case, that the plaintiff would have operated the mine in substantially the same way as it was operated under the lease which was given to another, no reason is perceived why proof of the profits made by that other may not be received as tending to show the amount of the damages that accrued to the plaintiff in the action. The value of the gold in the mine is a fixed quantity. The elements of uncertainty in extracting it are the expense of the mining operation and the location of the pay streak.

The defendant in error was shown to be an experienced miner. He testified that it was his intention to sink a shaft at the point where the subsequent lessee sunk his shaft and found pay dirt. It was shown that the gold taken from the mine during the mining season for which the lease was to have been given to the defendant in error was from $15,000 to $20,000 in value, and that the cost of mining was from 40 to 45 per cent. of the gross proceeds. From these estimates it will be seen that the amount awarded the defendant in error by the jury was well within the sum of the net profits he would probably have realized, had he been allowed to work the mine.

The contract in the case at bar is clearly distinguishable from the contracts involved in the cases of Smith v. Eubanks, 72 Ga. 280, and Rhodes v. Baird, 16 Ohio St. 573, cited by the plaintiff in error. In the first of those cases the action was for a breach of a lease of real estate to be used for a grocery store, blacksmith shop, and wagon yard, and the court held that the damages for the breach could not be shown by proof of the profits which were afterwards made by other parties who occupied the premises. The court said:

"The successors of plaintiff may have been more popular, and thus have made better customers; may have managed better and made more money. They may have been men of better habits, more prudent and successful business men."

In Rhodes v. Baird the action was brought on a contract in which the defendant agreed to make a lease of land to the plaintiff on which to plant and cultivate a peach orchard for a term of 10 years. The court held that it was not permissible to show as evidence of damages what would be the probable profits to be realized from the orchard, judging from the number of crops and the prices of peaches in the county for the prior 10 or 15 years; that such a proof of damages was clearly too speculative and uncertain to form the basis of recovery.

In Ruffatti v. Lexington Min. Co., 10 Utah, 386, 37 Pac. 591, the lessee of mining property sued the lessor for damages for wrongful ouster, and the court admitted, as evidence of damages, proof that he had exposed, ready for mining, 300 tons of ore, on which his profit under the terms of the lease would have been approximately $10,000, and permitted him to recover his share of the profits he would have made if he had been permitted to work during the remainder of his term.

In Isabella Gold Min. Co. v. Glenn, 37 Colo. 165, 86 Pac. 349, the Supreme Court of Colorado sustained the right of lessees of a mine, who had been evicted therefrom, to recover the value of the ores that, but for the eviction, they might have taken therefrom. In that case, for the purpose of proving what they could and would have mined during the term, and with the intent of showing the amount of their damages, the plaintiffs produced evidence of the mining and marketing of ores from the premises so demised to them largely in excess of the amount of the verdict.

In Paul v. Cragnaz, 25 Nev. 293, 59 Pac. 857, 60 Pac. 983, 47 L. R. A. 540, a case in which the owner of an undivided two-thirds interest in a mine refused to permit the plaintiff, who was the lessee of the other interest, to work the mine, the court said:

"We think the evidence would have justified the jury in finding that the plaintiff, as a practical miner of long experience in mining, whose business was that of mining, could and would probably have extracted such quantities of ore from said ore bodies during his said term, if the defendant had not excluded him therefrom, and sold the same at such market price then existing as would have yielded him a net profit even greater than the sum allowed him for damages. The only value a mine has to a lessee thereof is the profits arising from his working the same, and, when he is wrongfully excluded and prevented from such working, his loss consists in the loss of profits that he would have made, but for such exclusion."

The judgment is affirmed.