MALCOMSON v. WAPPOO MILLS et al.

(Circuit Court, D. South Carolina. February 22, 1898.)

1. LANDLORD AND TENANT—LEASE—LIEN FOR RENT.
An instrument which conveys to the grantee the "exclusive right to enter upon lands," and "to dig and mine phosphate rock and other minerals to any extent he may require, and carry away and sell for his own use," for a term of five years, on a certain royalty, is a lease, and not a license to mine. The lessor has the right of a landlord, and may distrain for rent.

2. SAME—PROPERTY IN HANDS OF RECEIVER.
Phosphate rock mined by the lessee having been placed in the hands of a receiver before the right to distrain for rent was exercised, the statute of Anne, in force in South Carolina (section 1943, Rev. St.), providing that no goods sold under execution can be removed from leased premises, unless the party removing pay to the amount of one year's rent, applies, and the proceeds of the rock are subjected to the payment of the rent.

3. SAME—CONTRACT WITH LESSEE.
A contract, not under seal and not recorded, entered into with one who is a lessee for a term of years, of phosphate lands, to mine rock at a certain price per ton, is not an assignment or a sublease. The contractor is not the owner of the rock mined, and cannot defeat the landlord's lien.

4. SAME—LABORER'S LIEN.
An independent contractor to mine phosphate rock at a certain price per ton, employing others to do the work, is not a laborer or employé entitled to the benefit of the South Carolina act of March 5, 1897, to provide for laborer's liens.

Charles Inglesby and H. A. M. Smith, for petitioner Lewis.
Lord & Burke, for petitioner Cuthbert.
Smythe, Lee & Frost, for general creditors.

SIMONTON, Circuit Judge. This case now comes up as to the disposition of the proceeds of sale of certain tons of phosphate rock on the land of George T. Lewis, mined under a mining agreement between C. C. Pinckney, Jr., and Mr. Lewis, and heretofore ordered to be sold by the receiver. George T. Lewis is the owner in fee simple of a tract of land in St. Andrews parish, in Charleston county, between Ashley and Stono rivers, containing about 3,775 acres of land. On the 8th day of January, 1897, an indenture was entered into between George

T. Lewis and C. C. Pinckney, Jr., wherein and whereby provision was made for the mining of these lands by C. C. Pinckney, Jr., for the full period of five years from 1st January, 1896, renewable from time to time as therein provided.

The first question made in the case is, is this indenture a lease, or merely a license to dig and mine,—a demise of a corporeal thing, or the creation of an incorporeal hereditament. The instrument itself is called by the parties a "mining lease." The words of conveyance are, "hath granted and leased, and by these presents do grant, lease, and to farm let." The thing conveyed is "the exclusive right to enter upon all the lands of the said George T. Lewis, situate," etc., with full description by metes and bounds, "and dig and mine upon the same for phosphate rock and other minerals, to any extent he may require, and carry away and sell the same for his own use." The consideration is a certain royalty, estimated and payable as stated in the deed. On the same day a tripartite agreement was made between George T. Lewis, C. C. Pinckney, Jr., and Charles Inglesby, adding other terms, but not affecting this question. It is earnestly contended that this instrument is not a lease, but that it is a license to mine on the lands, and to appropriate the minerals mined, with the right to enter and pass over the lands,—an incorporeal hereditament. Counsel rely upon Doe v. Wood, 2 Barn. & Ald. 724. In that case there was a grant to A. and his partners, fellow adventurers, executors, administrators, and assigns, of free liberty, license, power, and authority to dig, work, mine, and search for tin, tin ore, etc., and all other metals and minerals whatsoever, and the same "there found" to dispose of to their own use, for the term of 21 years. Chief Justice Abbott held that this deed operated as a license merely. He says:

"The purport of the granting part of this indenture is to grant, for the term therein mentioned, a 'liberty, license, power, and authority to dig,' etc., throughout the lands therein described, and dispose of the ore, to the grantee, his partners, etc. That is no more than a mere right to a personal chattel, when obtained in pursuance of incorporeal privileges granted for the purpose of obtaining it."

This interesting question is discussed in Massot v. Moses, 3 S. C. 181. As it involves the decision of the common law of that state, especially bearing upon the title to real estate, it is binding authority on this court. Beauregard v. New Orleans, 18 How. 497. In Massot v. Moses, the deed used this language: It grants, sells, and conveys to the party of the second part "the right and privilege of entering in and upon, by himself or his agents, all or any part of the land hereinafter described, for the purpose of searching for mineral and fossil substances, conducting mining operations to any extent the said party of the second part may deem advisable, and for working, mining, selling, and, as the property of the party of the second part, to use and appropriate for the term of ten years all organic or inorganic minerals, rocks, fossils, marl, or so-called phosphates, that may be found on, by any person or persons, or contained in, any part of all that plantation or tract of land," etc. It was contended that this instrument, admitted to be a deed of grant, was in effect a license, merely, and granted, sold, and conveyed, not a tangible estate, either real or a chattel,

but simply an interest in the nature of an incorporeal hereditament. This question went up to the supreme court, and that court held that the deed was a demise, and not simply the grant of a license to mine. "The true inquiry," say the court, is, "what, from the construction of the whole instrument, was the nature of the right, power, or property intended by the parties to be vested in the grantee?" Examining the terms of the deed, and using as a test its character whether exclusive or not, the court conclude from its terms that the right of the grantee during the term was exclusive, and so he had property in the minerals during that term. Therefore the grant operated as a demise, and was not merely a license. If this deed is examined, it will be seen that it gives to Pinckney the exclusive right to mine phosphate rock, as well as the possession. It gives him the exclusive right to enter upon all the lands of the grantor, and dig and mine upon the same for phosphate rock and other minerals, to any extent he may require, and carry away and sell the same for his own use. It, in express terms, deprives Lewis, the owner, of mining the lands, so long as Pinckney is mining there, although he could use them for purposes other than mining. The lessee must mine a minimum of 20,000 tons per year. He must pay all taxes on the "demised premises." He covenants to pay the rent or royalty and taxes. Under certain circumstances,—a very low price of rock,—he can cease mining, and can either remain in possession until prices shall rise, or he may surrender the possession to his lessor, who also has the right, on failure of the lessee, to perform the covenants of the lease, "without further notice or demand, enter into and upon the said premises, or any part thereof, in the name of the whole, and repossess the same as his former estate, and expel the said lessee and those claiming under him, and remove his and their effects forcibly, if necessary, without being taken or deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent, or proceedings for breach of covenant." The question in Massot's Case was whether the deed operated as a demise, or whether it created in the grantee an incorporeal hereditament. The conclusion was that it was a demise for a term of years, and not an incorporeal hereditament,—a conclusion based upon the fact that the right of the grantee was exclusive, even as against the grantor, and because it amounted to a conveyance of all the minerals the grantee could mine and remove during the term, giving him full proprietorship therein. It is difficult to reconcile this case with Doe v. Wood, or with the Pennsylvania cases commented upon in the opinion of the court, or with the case in Wallace, Jr., quoted in the opinion. But, as has been said, this case is of authority in this court. The others are not. There is but one provision in this deed which seems to militate against the otherwise plain intention of the instrument that it should operate as a lease:

"It is further agreed that the said lessee, his executors, administrators, and assigns, is not to use the rights herein granted so as to exclude the lessor, his heirs and assigns, from entry on the said lands by means of any roads constructed by the said lessee, his heirs, etc., or from prosecuting any other business, other than mining or taking therefrom phosphates: provided, always, that such business should not interfere with the lessee's mining operations."

But it would seem that a similar provision existed in the Massot deed. Moses could only dig and mine one-third of the land at one time. Massot's counsel contended, and the other side admitted, that Massot had a concurrent right with Moses to dig and mine in the other two-thirds, and perhaps in the third mined by Moses. This then being, not the creation of an incorporeal hereditament, but a demise for a term of years, it is what the parties thought and intended it to be, a lease, and the lessor had all the rights a landlord has. Rent or royalty being in arrear, Lewis issued a distress warrant, and posted and placarded a number of piles of rock lying on the land. This distress warrant was issued after a receiver was appointed in this case, and if the rock was the property of C. C. Pinckney, over whose estate a receiver was appointed, then the execution of the distress warrant was a nullity. Wiswall v. Simpson, 14 How. 52; Buck v. Colbath, 3 Wall. 340; In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785. But it is claimed that the claim for rent in South Carolina is protected by a lien, and that in any event the intervener can hold this rock for arrears of rent. Using the term "lien" in its broad sense, it cannot be said that in South Carolina it is secured by a lien. Salvo v. Schmidt, 2 Spears, 512. Under the operation of the statute of Anne, made of force in this state, afterwards repealed, and again re-enacted with modifications, and now known as section 1943, Rev. St., no goods sold under execution can be removed from leased premises unless the party seizing them pay to the landlord the rent,—an amount not more than one year's rent. To this extent, rent for a limited period has a priority, which may be called a lien. This is a remedial statute, and must be construed liberally. The equity of the statute has been applied to cases in bankruptcy. Longstreth v. Pennock, 20 Wall. 576; In re Trim, Fed. Cas. No. 14,174; Lambert v. De Saussure, 4 Rich. Law, 248; In re Wynne, Fed. Cas. No. 18,117. It is said, also, that the appointment of a receiver is in the nature of an equitable execution. So, in every point of view, the statute will be applied in this case, and the rent be paid out of the proceeds of rock, property of C. C. Pinckney, Jr.

During his operations, on 27th August, 1897, Mr. Pinckney entered into a contract with R. B. Cuthbert, under which Mr. Cuthbert claims to be the owner of the rock mined out of and remaining on the leased premises when the receiver was appointed. As the statute evidently contemplates only such goods as can be seized in execution (that is to say, goods the property of the lessee), if Cuthbert's contention be correct the landlord cannot claim a lien on this rock. Compare 14 St. at Large, p. 511. The contract is in these words:

"Mr. Cuthbert will undertake the mining (by hand) for his own account. He will agree to mine an average of 400 tons per week, and deliver it in the cars at $1.50 per ton, payable weekly, at the estimated figure of $2.00 per pit. Mr. Cuthbert is to dig 250 pits in advance, which will not be paid for until final settlement. In consideration of this agreement, he will continue to act as superintendent of the works, and look after their interest in all points." (Signed by both parties.)

The paper is written in lead pencil, except the signature of Mr. Cuthbert, which is in ink. Does this contract convey to Mr. Cuthbert the right and interest which Mr. Pinckney held under the deed of Lewis?

The instrument is informal, to a degree. . It is not under seal, and is not recorded. Pinckney held under a lease giving him the exclusive privilege of mining in these lands for a term of years, renewable to still further terms. This contract cannot be construed to be an assignment of his term, or a sublease, nor does it profess to convey to Cuthbert the phosphate rock. It is a contract between Pinckney and Cuthbert, under which, as an independent contractor, Cuthbert undertakes to do mining for Pinckney, to be paid for at a certain fixed rate for all rock mined and delivered. He secures the performance of his contract by digging 250 pits in advance, for which he will not be paid until final settlement. The results of his work must average 400 tons per week, and he gets his pay weekly, on an estimated figure. It has been suggested that he is to mine the rock, and then sell all that he can get out to Pinckney, at $1.50 per ton; that is to say, Pinckney, who has purchased from Lewis all the rock he can mine, first sells all such rock to Cuthbert, and then forthwith buys it again, at a figure not regulated by its value, but at a fixed rate. This is ingenious, if it is complicated. Is it not more simple and more reasonable to say that Pinckney, being the owner of all such rock as was mined, contracted with Cuthbert to do the mining, and paid him at the rate of $1.50 for each ton he should mine? It is said, however, that, if the rock be not the property of Cuthbert, he has a lien on it for the labor expended thereon, under the act of assembly approved 5th March, 1897. The title of this act is, "To provide for laborers' liens." It gives a lien to all employés in factories, mines, etc., to the extent of all such salary or wages as may be due to them under contract with their employer, on all the output of the mines, etc. It is evident that, under this contract, Cuthbert was an independent contractor, having the work done on his own account (that is, at his own expense). He necessarily was compelled to employ others. He was not bound to do any work himself. No provision is made for the payment of any one but himself, and he got a fixed sum per ton. He does not come within the term "laborer" or "employé." Vane v. Newcombe, 132 U. S. 220, 10 Sup. Ct. 60. This petition must be dismissed.

It is ordered that the special master ascertain what rent or royalty was due under the lease of George T. Lewis to C. C. Pinckney, Jr., and under the tripartite agreement part and parcel thereof, at the date of the appointment of the receiver in this case. And when said amount is ascertained, if it be less than the annual sum which under said lease and said tripartite agreement the said C. C. Pinckney, Jr., is liable to pay each year as rent for said lands, it is further ordered that, when this amount is so ascertained, the receiver apply the proceeds of the sale of the rock, heretofore ordered, towards the payment of the same, if it do not exceed the amount of four years' rent.