(April 30, 1926.)

L. B. PAGE, Respondent, v. M. L. SAVAGE, Appellant.

[246 Pac. 304.]

MINES AND MINERALS—LEASE OR LICENSE—AUTHORITY OF MANAGER OF MINING COMPANY — RATIFICATION BY CORPORATION — SUBLEASE OF MINING PROPERTY—CONTRACT — PLEADING — EVIDENCE—WRONGFUL EXTRACTION OF ORES—MEASURE OF DAMAGES—ESTOPPEL—INSTRUCTIONS.

1. Grant of mining privileges by mining company, and subsequent grant from lessee to third person, *held* to constitute leases and not licenses, under C. S., secs. 5373 and 5374, notwithstanding original grant was executed by manager of mining company.

2. Lease of mining privileges, executed by manager of mining company, even though unauthorized, became binding lease when ratified by company by acceptance of percentages or royalties in lieu of rents.

Points Decided.

3. Where mining company does not question validity of lease made by its manager, or of sublease executed by lessee to which company had consented, original lessee cannot raise such question, in action by sublessee for damages for removal of ore by sub-lessor.

4. Sublease of mining privileges, reserving in sublessor privilege of raising to certain level, *held* to place no limitations on sublessee's right to mine above such level, and to be free from ambiguities and uncertainties.

5. In action for damages by sublessee of mining privileges because of sublessor's removing ore from leased property, plaintiff was only required to set out contract *haec verba* in his complaint, where contract was not ambiguous or uncertain.

6. In action by sublessee of mining privileges for damages for alleged removal of ore by sublessor, excluding question asked plaintiff on cross-examination as to whether he knew that defendant had given another lease was not error, since fact that another lease had been given at subsequent date to different party without plaintiff's consent would constitute no defense to action.

7. In action by sublessee of mining privileges for damages for removal of ore by sublessor, sustaining plaintiff's objection to question relative to his signature on entirely different lease was proper.

8. Sublessee of mining privileges, alleging damages because of removal of ore by sublessor, being qualified as experienced miner to testify as to methods and means of extracting ore, was properly permitted to testify that he could and would have removed ore if he had been permitted to do so, stating method he would use and costs thereof; weight of such evidence being for jury.

9. On appeal from judgment for sublessee of mining privileges for damages for removal of ore by sublessor, every reasonable intendment in support of verdict will be indulged in.

10. Where wrongful extraction of ores by sublessor of mining privileges had been established and approximate value thereof shown, together with fact that ore was removed within life of lease, such facts may be considered in connection with sublessee's testimony that he could, and would, have removed ore had he been permitted to do so.

11. Where court, by overruling demurrer to complaint by sublessee of mining privileges for damages for removal of ore by sublessor, ruled that contract was not ambiguous, sublessor has no ground for complaint of instruction submitting question of ambiguity to jury after admission of evidence of practical construction of exception contained in contract.

Points Decided.

12. One of elements essential to application of doctrine of equitable estoppel is that party claiming benefit must be ignorant of true state of facts.

13. Sublessor of mining privileges, having removed ore above level which he knew he had subleased, cannot claim estoppel because of renewal of sublease or of failure of sublessee to protest or seek to enjoin him from removing ore.

14. In action by sublessee of mining privileges for damages for removal or ore by sublessor, instruction permitting jury, as means of ascertaining damages, to consider smelter settlements which sublessor received for ore was proper.

15. In action by sublessee of mining privileges for damages for ore removed by sublessor, instruction that in ascertaining damages jury should take into consideration quality and quantity of ores which could have been removed by sublessee and smelter returns in determining value in connection with reasonable cost of removal, together with royalties to company and to sublessor, was proper as to measure of damages.

16. Under sublease of mining privileges, which was lease and not merely license, sublessee could recover for ore removed by sublessor without proving that he had exhausted all ore covered by lease other than ore removed by sublessor.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. A. H. Featherstone, Judge.

Action for damages. Judgment for plaintiff. *Affirmed.*

Publisher's Note.
1. See 16 R. C. L. 549.
9. See 2 R. C. L. 219.
12. See 10 R. C. L. 696.

See Appeal and Error, 4 C. J., sec. 2718, p. 772, n. 89.
Estoppel, 21 C. J., sec. 126, p. 1123, n. 36; sec. 222, p. 1217, n. 73.
Evidence, 22 C. J., sec. 771, p. 681, n. 70.
Mines and Minerals, 40 C. J., sec. 460, p. 914, n. 39; sec. 464, p. 915, n. 70; sec. 466, p. 916, n. 81; sec. 585, p. 992, n. 99; sec. 598, p. 1003, n. 55, 57; sec. 609, p. 1010, n. 90.
Pleading, 31 Cyc., p. 65, n. 44.
Trial, 38 Cyc., p. 1531, n. 17.
Witnesses, 40 Cyc., p. 2493, n. 37.

Cannon & McKevitt, Lester S. Harrison and J. E. Gyde, for Appellant.

The contract, exhibit "A," although designated a "mining lease," conveyed no interest from the company to Savage in any of its mining ground, nor in any of the ores in its ground before extraction; nor any interest in the ores extracted from its ground after extraction. (C. S. 5374.)

While the manager of a corporation has great powers in the way of entering into contracts for the employment of servants of the corporation, he has no power whatever to convey its lands or lease them or give licenses therein. (3 Fletcher, Cyc. Corp., p. 3307. sec. 2127; 3 Cook, Corp., 6th ed., sec. 719, p. 2313; *Butte & B. Consol. Min. Co. v. Consolidated Oregon Purchasing Co.*, 21 Mont. 539, 55 Pac. 112; *Franklin v. Havalena Min. Co.*, 16 Ariz. 200, 141 Pac. 727.)

Even had the contract been executed by an attorney in fact, holding absolute authority from the company to lease its lands, it would be nothing more than a working contract, granting to Savage the right to mine ores somewhere in the company's property (not definitely described where), giving unto him for mining the same, instead of a wage, a certain percentage of the net smelter returns of the ores so mined. (*Hudepohl v. Liberty Hill Con. Min. & Water Co.*, 80 Cal. 553, 22 Pac. 339; *Arrington v. State*, 168 Ala. 143, 52 So. 928; *Smyth v. Tennison*, 24 Cal. App. 519, 141 Pac. 1059.)

Although an instrument may be designated a lease and use technical words of a lease, that will not make it a lease if in fact it is something else. (*Whiteside v. Oasis Club*, 162 Mo. App. 502, 142 S. W. 752.)

Where a contract is set out *in haec verba* in a pleading the pleading must partake of whatever ambiguity there is in the contract, and if the contract is uncertain, the pleader must put some definite construction upon it by averment; otherwise it is subject to general demurrer. (*Durkee v. Cota*, 74 Cal. 313, 16 Pac. 5; *Joseph v. Holt*, 37 Cal. 250; *Hill v. McCoy*, 1 Cal. App. 159, 81 Pac. 1015; *Merkaley v.*

*Fisk,* 179 Cal. 748,178 Pac. 945; *Silvers v. Grossman,* 183 Cal. 696, 192 Pac. 534; *More v. Elmore County Irr. Co.,* 3 Ida. 729, 35 Pac. 171; *Estes v. Desnoyers Shoe Co.,* 155 Mo. 577, 56 S. W. 316.)

The motion of defendant to strike out the testimony of plaintiff to the effect that he could and would remove the ore if he had been permitted should have been granted, and the refusal to so do was prejudicial error. (*Cleveland, Cincinnati, Chicago & St. L. Ry. Co. v. Alfred,* 113 Ill. App. 236.)

The evidence of the witness to the effect that he could and would have taken out this ore in controversy was a conclusion and should have been stricken. (*Fowler v. Delaplain,* 79 Ohio, 279, 87 N. E. 260, 21 L. R. A., N. S., 100; *Insurance Co. of North America v. Osborn,* 26 Ind. App. 88, 59 N. E. 181, and cases cited; *Dubois v. Williamson,* 93 App. Div. 361, 87 N. Y. Supp. 645; *Manufacturers Accident Indemnity Co. v. Dorgan,* 58 Fed. 945, 7 C. C. A. 581, 22 L. R. A. 620.)

If parties construe a contract differently the court should direct its inquiry to the question whether there is an ambiguity and should look to a solution of the ambiguity. To solve the difficulty the court should consider in their order, first, a construction placed thereon by the parties if one has been placed thereon; second, such construction as shall be as near the minds and intent of the parties as it possibly may be and the law may permit; and, third, such as shall not do violence to the common understanding of the language used. (*Fullerton v. United States Casualty Co.,* 184 Iowa, 219, 6 A. L. R. 367, 167 N. W. 700; *Burton v. Douglass,* 141 Wis. 110, 18 Ann. Cas. 734, 123 N. W. 631; *Pittsburg Vitrified Paving & Bldg. etc. Co. v. Bailey,* 76 Kan. 42, 90 Pac. 803, 12 L. R. A., N. S., 745; *Baxter Springs v. Baxter Springs Light & Power Co.,* 64 Kan. 591, 68 Pac. 63; *Schroeder v. Griggs,* 80 Kan. 357, 102 Pac. 469; *Mitau v. Roddan,* 149 Cal. 1, 84 Pac. 145, 6 L. R. A., N. S., 275; *Keath v. Electric Eng. Co.,* 136 Cal. 178, 68 Pac. 598; 6 R. C. L. 852, sec. 241; *State v. Twin Falls Canal Co.,* 21 Ida. 410, 121 Pac. 1039, L. R. A. 1917F, 236; *Twin Falls*

*Orchard & Fruit Co. v. Salisbury,* 20 Ida. 110, 117 Pac. 118; *Burke Land Co. v. Wells, Fargo & Co.,* 7 Ida. 42, 60 Pac. 87; *Manhattan Life Ins. Co. v. Wright,* 126 Fed. 82, 61 C. C. A. 138; *Topliff v. Topliff,* 122 U. S. 121, 7 Sup. Ct. 1057, 30 L. ed. 1110.)

Upon various grounds of estoppel and their application we cite the following cases: *Donovan v. Maloney,* 3 Boyce (Del.), 453, 84 Atl. 1032; *Detroit Sav. Bank v. Loveland,* 168 Mich. 163, 130 N. W. 678, and cases cited; Bigelow on Estoppel, 6th ed., 570; *Archdeacon v. Cincinnati Gas & Elec. Co.,* 76 Ohio, 97, 81 N. E. 152; *Eltinge v. Santos,* 171 Cal. 278, Ann. Cas. 1917A, 114, 152 Pac. 915; *Carmine v. Bowen,* 104 Md. 198, 9 Ann. Cas. 1135; *Branthover v. Monarch Elevator Co.,* 33 N. D. 454, 156 N. W. 927; *Dickinson v. Perry,* 75 Okl. 25, 181 Pac. 504; *Tobias v. Morris,* 126 Ala. 535, 28 So. 517; *H. W. Manville Co. v. Allen,* 37 Ida. 153, 215 Pac. 840; *Hemenway v. Craney,* 36 Ida. 11, 208 Pac. 407; *Leaf v. Reynolds,* 34 Ida. 643, 203 Pac. 458; *Seat v. Quarles,* 31 Ida. 212, 169 Pac. 1167; *Exchange State Bank v. Taber,* 26 Ida. 723, 145 Pac. 1090.

The plaintiff having no interest in the ores at any time, he is not entitled to the value of the ores mined after deducting the cost of mining, but damages only to the extent of the actual injury proved, and the plaintiff having, as shown by his own testimony and the testimony of his witness, that he was mining upon ore which he had not exhausted at the termination of the contract of the plaintiff and defendant on October 1, 1923, he is not damaged. (*Arnold v. Bennet,* 92 Mo. App. 156; *Baker v. Hart,* 123 N. Y. 470, 25 N. E. 948, 12 L. R. A. 60; *Providence Min. & Mill. Co. v. Nickolson,* 178 Fed. 29, 101 C. C. A. 157; *Mexican Gulf Oil Co. v. Campania Trans. D. P., S. A.,* 281 Fed. 148.)

John P. Gray, W. C. McEachern and Frank T. Post, for Respondent.

The contract in question is a lease. (27 Cyc. 689, 690; *Cary Hardware Co. v. McCarty,* 10 Colo. App. 200, 50 Pac. 744; *Kirk v. Mattier,* 140 Mo. 23, 41 S. W. 252; *Mal-*

*comson v. Wappoo Mills,* 85 Fed. 907; *Massot v. Moses,* 3 S. C. 168, 16 Am. Rep. 697; *Comley v. Ford,* 65 W. Va. 429, 64 S. E. 447; *Barnsdall v. Bradford Gas Co.,* 225 Pa. 338, 74 Atl. 207, 26 L. R. A., N. S., 614.)

A contract which is a license is found in the case of *Clark v. Wall,* 32 Mont. 219, 79 Pac. 1052.

The leasing of these lands is a part of the ordinary course of business of the mining company. However, an unauthorized lease by an officer may be ratified and, therefore, rendered binding. (*O'Neil v. Dunn,* 63 N. H. 393.)

There was ample evidence for submission of the question of damages to the jury. (*Halla v. Rogers,* 176 Fed. 709; 100 C. C. A. 263, 34 L. R. A., N. S., 120; *Isabella Gold Min. Co. v. Glenn,* 37 Colo. 165, 86 Pac. 349; *Kjelsberg v. Chilberg,* 177 Fed. 109, 100 C. C. A. 529.)

"Profits may be recovered as damages for breach of a contract for mining ore where they are not uncertain or remote, and where obviously within the intent and mutual understanding of both parties, when the contract was made." (*The Anvil Min. Co. v. Humble,* 153 U. S. 540, 14 Sup. Ct. 876, 38 L. ed. 814.)

The truth concerning the facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. (2 Pomeroy's Equity Jurisprudence, secs. 805, 810; *Brant v. Virginia Coal & Iron Co.,* 93 U. S. 326, 23 L. ed. 927; *Steel v. St. Louis Smelting & Ref. Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. ed. 226; *Carrol-Cross Coal Co. v. Abrams Creek Coal & Coke Co.,* 83 W. Va. 205, 98 S. E. 148.)

"Mere silence or some act done, where the means of knowledge are equally open to both parties, does not create an estoppel *in pais.*" (*Houser v. Austin,* 2 Ida. 204, 10 Pac. 37; *Cautley v. Morgan,* 51 W. Va. 304, 41 S. E. 201; *Lower Latham Canal Ditch Co. v. Louden Irr. Canal Co.,* 27 Colo. 267, 83 Am. St. 80, 60 Pac. 629; *Carroll Springs Distilling Co. v. Schnepfe,* 111 Md. 420, 74 Atl. 828.)

BUDGE, J.—On October 1, 1920, appellant entered into a written agreement with the Bunker Hill & Sullivan Mining & Concentrating Company, a corporation (which hereinafter will be referred to as the company), in which written agreement the company leased to appellant the exclusive privilege of mining within that portion of its property "lying above the Sweeny tunnel level, between vertical planes through the center line of the Tyler Winze to a point where it would intersect the Sweeny Tunnel level; thence S. 8½° E. 200'; thence S. 87° W. 193'; thence N. 10° W. 650' to the entrance of the Clark drift; thence N. 52° E. to the surface." Said lease was for a period of one year from the date thereof, or until October 1, 1921, and was renewed from year to year.

On March 19, 1921, appellant, by written agreement, entered into a lease with respondent, subletting to respondent for a period of two years the premises above described and theretofore leased by appellant from the company, excepting in the sublease a certain portion of the ground west of what is known as the 9 Chute, to which further reference will be hereafter made. On March 19, 1923, by written agreement, said lease last above mentioned was renewed and extended for a period of two years.

There is no dispute that during the time mentioned in the leases dated March 19, 1921, and March 19, 1923, and up to the expiration of the time fixed in both of the aforesaid leases, appellant's leases with the company were in force.

The lease of March 19, 1921, between appellant and respondent granted to respondent the exclusive privilege of mining that portion of the mining property described in the lease from the company to appellant, "except, that in case the party of the first part (Savage) shall discover ore in that portion of ground west of the Nine (9) Chute, he shall have the privilege of raising to the K level; also, that in case the said Page shall discover ore in the same ground, said Page shall have the right to sink or raise from the J level up; provided that the same ore does not conflict with the discovery of the said party of the first part." It was provided, "First, that the said L. B. Page will pay all

42 Idaho—30

costs of mining, development, equipment and delivery of a marketable product to the railway cars or delivery of all concentrating ore to the Bunker Hill & Sullivan Company for separation, and will hold the said party of the first part safe from all liens, judgments and claims of whatever nature, and it is distinctly understood that the said L. B. Page is an independent contractor and operator and that the said party of the first part shall not be liable for any personal injuries that may occur to the party of the second part or to any of his associates, partners, contractors, employees, or third persons whatever. *Second,* said L. B. Page shall not transfer this lease or any part thereof, nor sublet any portion of said premises without the written consent of the party of the first part. *Third,* that all ore taken from the above-described property shall be delivered to the Bunker Hill & Sullivan Company's mills or smelter, and that the said party of the second part shall pay to the said party of the first part Seven (7%) per cent of the net smelter returns on said ore." Paragraphs numbered *Fourth* and *Fifth* in the lease provide that all present equipment, such as tools, etc., shall be included in the lease and in case of a cancelation of the same was to be left on the property; and if the lessee fail to perform any of the terms and covenants of the contract or lease that the lessor might re-enter and take possession.

It is alleged in the amended complaint that after the execution of the agreement of March 19, 1921, respondent entered into possession of the property and expended large sums of money; that he informed the appellant that he knew or was satisfied that ore existed above the Sweeny level and west of the No. 9 chute, and requested of the appellant the use of certain workings then in possession of appellant and extending toward the area where the respondent informed the appellant that said ore existed; and it is alleged that appellant put respondent off, stating that he could soon thereafter have the workings, and that after waiting some two or three months respondent again asked appellant concerning the same and appellant said that he needed the

said workings in moving a little ore that he was taking out. It is further alleged, on information and belief, that appellant commenced himself the exploration of said area for said ore and did extend his, appellant's workings into the area so leased to respondent and above K level, and did remove from above K level within said area large bodies of high-grade lead and silver ore; that K level and said J level mentioned in the contract herein were well-known levels in the mine of the said company.

It is further alleged that before the commencement of this action and since the execution of said contract or lease of March 19, 1921, the appellant, by means of certain underground workings in his control and possession entered into and within the premises so leased to respondent without his consent and wrongfully and unlawfully, secretly and wilfully and without any right whatever given, and extracted ores and minerals found therein within the area so leased to respondent and above K level, and converted the same to his own use, respondent alleging that under the lease he had the exclusive right to mine the ore above K level and within the area described in the lease. It is also alleged that the exact quantity and value of the ore and minerals so unlawfully mined and converted by appellant, as well also as the exact dates of removal, were not known to the respondent, but upon information and belief it was alleged that the appellant mined, removed and converted ore of the value of more than $150,000, after paying freight and treatment charges, all royalties, and the reasonable cost of mining. The amended complaint alleged further that respondent did not have any knowledge or means of knowledge of the fact that the said ore was being removed until a large portion of the ore so removed had been taken out by appellant, and that respondent had no notice or knowledge thereof until about the month of September, 1922, and alleged further that he could easily within the period of time covered by his contract have removed said ore and would have removed the same, except for the acts of the appellant, and

damages were prayed for in the sum of $150,000 for the wrongful removal of the ore by appellant.

A demurrer was filed to the amended complaint and overruled. Appellant answered the complaint and in effect denied that he had mined any ore in any ground in which respondent had any right to mine ore; denied that the premises were leased to the respondent; denied that the contract between the appellant and respondent and its extension were executed with the consent of the company or that respondent entered into possession of the mining lands with the knowledge or consent of the company; denied that the respondent could or would have removed the ore in question, or that he had the exclusive right to mine ores above K level.

Two affirmative defenses were set up by appellant, first, that the portion of the lease describing the property leased to respondent was ambiguous, uncertain and not capable of construction, but that the parties had placed a practical construction upon it and acted thereunder; and the second affirmative defense was one of equitable estoppel.

The cause was tried before the court and jury and resulted in a verdict in favor of the respondent in the sum of $14,514.55 and costs. This appeal is from the judgment.

Appellant specifies and for a reversal relies upon fourteen assignments of error, including a specification of particulars in which the evidence is insufficient to sustain the verdict of the jury. In considering the errors assigned we shall take them up and dispose of them in the order in which they are discussed in appellant's brief.

[1] The first point urged by appellant involves the question of whether or not the contract designated as a "mining lease," entered into between the company and appellant, conveyed an interest in any of its mining property or in any of the ore in the ground before extraction, or any interest in the ore extracted from the company's ground. It is contended by appellant that, since the lease so designated was entered into between the manager of the company and appellant, it was such a contract that the manager had no power to make, which being true the conveyance was not

a lease but a mere license revocable at will, and that appellant took no interest in the mining property under C. S., secs. 5373 and 5374, which provide:

"A conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing.

"When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact."

This contention applies both to the lease from the company to Savage and the lease from Savage to Page, and the question raised is whether or not the grants were leases or licenses. Based upon the following authorities we have reached the conclusion that both the grant from the company to Savage and the grant from Savage to Page were leases and not licenses: 27 Cyc. 689, 690; *Cary Hdw. Co. v. Mc-Carty*, 10 Colo. App. 200, 50 Pac. 744; *Kirk v. Mattier*, 140 Mo. 23, 41 S. W. 252; *Malcomson v. Wappoo Mills*, 85 Fed. 907; *Massot v. Moses*, 3 S. C. 168, 16 Am. Rep. 697; *Comley v. Ford*, 65 W. Va. 429, 64 S. E. 447; *Barnsdall v. Bradford Gas Co.*, 225 Pa. 338, 74 Atl. 207, 26 L. R. A., N. S., 614; *Heywood v. Fulmer*, 158 Ind. 658, 32 N. E. 574, 18 L. R. A. 491; *Clark v. Wall*, 32 Mont. 219, 79 Pac. 1052. A differentiation between what is a license and a lease will be shown by a reading of the case last cited in connection with those just preceding it.

[2]     There is no reason for holding the instruments to be licenses and not leases, in so far as the appellant is concerned, particularly touching the power of the manager of the company to enter into the lease with Savage. It is clear from the record that it is and was a part of the ordinary business of the company to lease its mining ground to people generally engaged in the mining business as was the appellant, and that such leases had been ratified by the company by the acceptance of percentages or royalties, in lieu of rents, from the profits derived from ores extracted by such

lessees. In the circumstances, even though it were conceded that the lease was unauthorized, if ratified, which it was, it was a binding lease. (*O'Neil v. Dunn*, 63 N. H. 393.) [3] The company is not here raising the question of the validity of the lease made to Savage or of the sublease made to Page, which being true and since it appears that the company consented to the sublease of Savage to Page, appellant cannot raise the question. (3 Fletcher, Cyc. Corporations, secs. 1946, 1947, p. 3142.)

It is next urged that the demurrer to the complaint should have been sustained, for the following reasons: (1) That if the contract between respondent and appellant is susceptible of a construction at all, that construction must be that Savage had the right to mine any ores west of No. 9 chute and had the right to mine the ore in controversy since he first discovered it; (2) that no possible construction can be placed upon said contract from the contract itself as would entitle respondent to mine the ores in controversy, since if the said contract is not susceptible of a construction granting appellant the right to mine the ores in controversy, it is certainly so ambiguous that it cannot be construed as giving respondent the right to mine such ores; (3) that notwithstanding such ambiguity, the respondent did not place any construction upon the contract.

We are now called upon to construe the contract or sublease entered into between appellant and respondent and particularly the following portion thereof, viz.:

Appellant "does hereby lease (or sublease) all the above described property to the said L. B. Page, party of the second part, for a period of two (2) years if the party of the first part shall have control of said ground for that period of time, with the privilege of renewal at the option of the party of the second part. Except, that in case the party of the first part shall discover ore in that portion of the ground west of the Nine (9) chute, he shall have the privilege of raising to the K level; also that in case the said Page shall discover ore in the same ground, said Page shall have the right to sink or raise from the J level up; provided

that the same ore does not conflict with the discovery of the said party of the first part.''

The ground subleased by Savage to Page included all of the ground leased by Savage from the company with the following exception: that in case Savage ''shall discover ore in that portion of the ground west of the Nine (9) chute, he shall have the privilege of raising to the K level.'' Savage reserved the right of working in the ground to the west of No. 9 chute and below K level, which clearly appears from the language of the lease above set out.

[4] As said in respondent's brief, ''the contract with respect to the territory above K level is not .at all ambiguous. . . . . As to the portion of the ground above K level Page is given the exclusive right under the lease. The language is so clear, namely, that in case Savage should discover ore in that portion of the ground west of No. 9 chute, he should have the privilege of raising *to* the K level. That does not mean *above* K level, or from K level up. . . . . '' As to the area below K level the lease provides ''in case the said Page shall discover ore in the same ground said Page shall have the right to sink or raise from the J level up, provided that the same ore does not conflict with the discovery of the said party of the first part (Savage).'' Page had the exclusive right of mining east of No. 9 chute and west of No. 9 chute above K level; both Page and Savage had the right to mine west of No. 9 chute and below K level. There were no limitations placed upon Page's right to mine above K level. Below K level both had a right to mine, but Page's discovery of ore should not interfere with Savage's discovery, if any, within that area. To our minds the sublease is subject to this construction and when so construed is free from ambiguities and uncertainties.

[5] Appellant earnestly contends that, without any other evidence as to the intention of the contracting parties, the right retained by Savage of raising to K level means that Savage reserved the right to extract any ore above that level first discovered by him. We are unable to agree with this contention. The contract not being ambiguous or un-

certain, respondent was not required to do other than set out the contract *in haec verba* in his complaint, and having done so and the complaint otherwise stating a cause of action, the court did not err in overruling the demurrer.

[6] Assigned as prejudicial error is the court's ruling in sustaining respondent's objection to the question asked respondent on cross-examination, "And you knew at that time, didn't you, that it was part of the property which you now say is covered by your lease and had been leased to somebody else?" Appellant's purpose in asking the question was to ascertain whether or not respondent knew that appellant had given another lease within the property covered by the contract between appellant and the company, and it is appellant's contention that if the respondent had answered the question in the affirmative it would have further explained the intention of appellant and respondent in entering into their contract, tending to show that appellant in granting respondent the right to mine in the ground covered by the contract from the company, had not given him an exclusive right so to do, and that the intention was that others than respondent were entitled to work in the ground and take ore therefrom. The information sought to be obtained by appellant, if material, had already been elicited, since, in answering previous questions propounded along the same line by appellant's counsel, respondent had stated that another lease had been given to one Andrag; that it covered ground "back between the hanging wall and down at the bottom." The fact, however, that another lease had been given at a subsequent date to a party other than respondent, without his consent and in violation of the terms of the contract between appellant and respondent, would constitute no defense to the present action.

[7] The point is sought to be made that the court committed prejudicial error in sustaining respondent's objection to the question, "I call your attention to that contract and lease attached to it and ask you if that is your signature?" asked respondent on cross-examination. There is no merit in this contention since it involves an entirely different lease

made between the company and respondent and is immaterial.

[8]  Coming now to assignment No. 5, complaining of the action of the court in refusing to sustain appellant's motion to strike out the testimony of respondent to the effect that he could and would have removed the ore if he had been permitted to do so, the objection is based upon the ground that the testimony was speculative and called for a conclusion of the witness.  Respondent did not only testify that he could and would have removed the ore within the time limited in the lease, but he further testified how he would have removed it and what it would have cost him to take it out. Respondent was an experienced miner, familiar with the methods and means adopted by miners in extracting ore from territory in that immediate vicinity, and was, therefore, qualified to testify in that behalf.  The weight of his evidence was for the jury, and was properly admitted.  [9] In such a case as this every reasonable intendment in support of the verdict will be indulged in.  [10]  The trespass of appellant having been established and proof of the wrongful extraction of the ores and the approximate value thereof having been shown, together with the further fact that appellant removed the ore within the life of respondent's lease, clearly obviates the objection urged, and may be considered in connection with respondent's testimony upon that point. (*Isabella Gold Min. Co. v. Glenn,* 37 Colo. 165, 86 Pac. 349.) The ruling of the court on this point is supported by another principle: "When the nature of a wrongful act is such that it not only inflicts an injury, but takes away the means of proving the nature and extent of the loss, the law will aid the remedy against the wrongdoer, and supply the deficiency of proof caused by his misconduct, by making every reasonable intendment against him, and in favor of the person whom he has injured." (*Little Pittsburg Con. Min. Co. v. Little Chief Con. Min. Co.,* 11 Colo. 223, 7 Am. St. 226, 17 Pac. 760.)

Assignment of error No. 6 is predicated upon the action of the court in denying appellant's motion for an instructed

verdict, but in view of the conclusions we have reached touching the assignments heretofore discussed and such as will hereafter be considered, there is no necessity for discussing the several grounds set up in support of the motion for an instructed verdict, since they are covered by the other assignments made.

Complaint is made of instruction No. 5, in which the court told the jury, *inter alia:*

"I charge you that it is not material whether the lease is or is not ambiguous in any respect except one, to wit: as to who shall have the right to mine above K level, and if you find in that regard the lease is not ambiguous you shall not consider any evidence bearing upon the question of the practical construction of the parties."

[11] It is insisted that the court in this instruction vested in the jury the power to determine whether that portion of the contract referred to was or was not ambiguous; that it was the duty of the court and not the jury to determine whether or not the contract was ambiguous, and if the court found that the contract was not ambiguous, then it was its duty to tell the jury what the meaning of the contract was, but if the court found that the contract was ambiguous, then it was its duty to instruct the jury to determine the meaning of the contract from extraneous evidence such as the surrounding facts, the relation of the parties, the construction the parties may have put upon the contract themselves, etc.

The question of whether or not the contract was ambiguous was first raised upon demurrer, appellant insisting that the complaint was demurrable, although the contract was set out *in haec verba* in the complaint, for the reason that the contract was ambiguous and it was therefore necessary for the respondent to set out in his complaint a construction of the contract. The court overruled the demurrer, thereby holding that the contract was not ambiguous. At the trial appellant introduced evidence, over the objection of the respondent, of an alleged practical construction placed upon the contract by the parties. The court having properly

held that the contract was not ambiguous, there was but the question of damages to be submitted to the jury, and by reason of the fact that the court permitted evidence of a practical construction of the exception contained in the contract to be submitted to the jury and instructed the jury upon this phase of the contract, and the jury having found by its verdict that the contract was not ambiguous, appellant has no ground for complaint.

There is no merit in assignment of error No. 8, involving instruction No. 6.

[12] Appellant complains of the giving of instructions Nos. 8 and 9, in which instructions the jury was advised as to the law of estoppel and the evidence adduced thereunder. We are of the opinion that the instructions so given did not constitute prejudicial error. One of the elements essential to the application of the doctrine of equitable estoppel is that the party claiming its benefit must be ignorant of the true state of facts. [13] Under this rule Savage was not ignorant of the true state of facts. He knew that he had leased to Page all of the ground above K level. The jury found as facts that Page had gone to Savage for the express purpose of arranging with him for the use of certain workings in order to reach the ore body believed by Page to be located in the vicinity of Horse Shoe Bend above K level, and that Savage told Page he could use said workings as soon as he, Savage, had removed a little ore, and that in a subsequent conversation months later Savage told Page that the ore was all gone and was of a very poor grade. Under the facts so disclosed the renewal of the lease from Savage to Page would not constitute estoppel; neither would the further fact that Page did not protest to Savage or seek to enjoin him from removing the ore. (*Brant v. Virginia Coal & Iron Co.*, 93 U. S. 326, 23 L. ed. 927; *Steel v. Smelting Co.*, 106 U. S. 447, 1 Sup. Ct. 389, 27 L. ed. 226; *Carrol-Cross Coal Co. v. Abrams Creek Coal & Coke Co.*, 83 W. Va. 205, 98 S. E. 148; *Houser v. Austin*, 2 Ida. 204, 10 Pac. 37.) For the reasons above mentioned it was not error for the

court to refuse to give appellant's requested instruction No. 5, submitting to the jury the same question.

Coming to assignment of error No. 12, predicated upon the refusal of the court to instruct the jury to bring in a verdict for defendant as asked in appellant's instruction No. 1, the assignment is without merit, since there was ample evidence to go to the jury.

Assignment of error No. 11 is an attack upon instruction No. 10, and involves also specification of error No. 4 which raises the question of the admission of exhibit "G" (assay certificate) as well as the fifth and sixth particulars in which the evidence is said to be insufficient to sustain the verdict. The jury was instructed by instruction No. 10, in part, as follows:

"The plaintiff would be entitled to only the damages which the plaintiff suffered. Such amount cannot be determined with mathematical certainty but you shall use your best judgment under the evidence which has been introduced.

"You should take into consideration the quantity and quality of the ores and minerals lying above K level which the plaintiff could and would have removed and had treated at the smelter if the defendant had not extracted and removed the same.

"You shall determine the value thereof and in that connection may consider the smelter returns obtained by the defendant which are in evidence.

"You must consider what would have been the reasonable cost and expense of reaching, mining, extracting and removing said ores and minerals which the plaintiff could and would have extracted and removed and sent to the smelter but for the acts of the defendant.

"You must also take into consideration the royalty of 15% to be paid to the Bunker Hill & Sullivan Mining & Concentrating Company under the lease given by it, and the royalty of 7% on net smelter returns to be paid by the plaintiff to the defendant under the lease to the plaintiff of March 19, 1921.

"Plaintiff is entitled to recover, if you find for the plaintiff, as damages only the net loss which the plaintiff suffered through or as a result of the act of the defendant in the mining and extracting said ores and minerals lying above K level and depriving the plaintiff of the right to mine and extract and remove said ores and minerals."

The jury was also told in this instruction that if it found for the plaintiff he should be allowed interest on the amount found at the rate of seven per cent per annum from November 1, 1923.

[14] The instruction above set out permitted the jury, as one of the means of ascertaining the amount of damages suffered by Page, to take into consideration the smelter settlements which the appellant received for the ore in question, and such evidence was proper. (*Kjelsberg v. Childberg,* 177 Fed. 109, 100 C. C. A. 529; *Hartford Iron Min. Co. v. Cambria Min. Co.,* 93 Mich. 90, 32 Am. St. 488, 53 N. W. 4.)

Appellant contends that the instruction is erroneous and does not state the correct measure of damages, and insists that if respondent had owned the ore in question then the proper measure of damages for the wrongful taking would have been as defined in said instruction, but that since respondent did not own the land in which the ore was situated nor the ore in place, nor any interest therein while the ore was in the ground or after it was mined, but simply had a working contract with Savage, before he could recover damages upon any theory he was called upon to establish by competent evidence that he could and would have extracted the ore prior to the termination of his contract with Savage, and furthermore, that there was no other ore in undisputed territory which he could have mined with as great profit as the ore in controversy.

[15] In our opinion, under the facts of this case we would not be justified in reaching the conclusion that Page had but a working contract with Savage or a mere license revocable at will, but, on the contrary, we are convinced that Page had a lease which carried with it the exclusive right to mine all of the ore in the ground described above K level.

Page entered into the contract for the express purpose of mining and extracting ore above K level, and when he began operating in 9½ raise his purpose was to reach L level and to follow west through the tunnel from L level to the Horse Shoe Bend, where, from information received by him prior to entering into the contract with Savage, he had reason to believe and did believe that a body of ore existed. When he reached L level he encountered difficulties, found the tunnel had caved in, and to clear it he believed the expense would be great, so he sought out Savage and told the latter of the conditions as he found them at L level above 9½ raise and that he could reach the body of ore that was near Horse Shoe Bend easier and at less expense if Savage would grant him permission to use certain workings below L level then in possession of Savage. There is sufficient competent evidence to support the jury's finding that Savage by his acts and conduct deceived and misled Page to the end that the latter refrained from prosecuting his work along L level, and that thereafter, and acting upon the information received from Page, Savage went into what is known as the Old Raise on J level up to a point marked 90 on the model, drifted a short distance to the west and then raised up, reaching the body of ore lying immediately west and south of Horse Shoe Bend, and extracted a large body of ore included in that portion of the ground leased to Page and practically all of which was above K level. In the circumstances we are of the opinion that the court correctly instructed the jury as to the proper measure of damages to be applied to the facts.

[16] It is strenuously insisted that there is an utter lack of evidence to support the verdict in that the respondent failed to prove that he could and would have extracted the ore prior to the termination of his contract with Savage. This contention is untenable since the evidence shows that Page could have removed the ore and that he would have done so. Furthermore, it was shown what it would have cost, the time it would have taken, and that the ore could have been removed within the time limited, and since the

contract was a lease and not a license merely, there is no merit in the contention that Page could not recover unless he proved that he had exhausted all the ore covered by the lease other than the ore in controversy.

From what has been said it follows that the evidence is sufficient to sustain the verdict, and no error appearing which would justify a reversal, the judgment is affirmed. Costs to respondent.

William A. Lee, C. J., and Wm. E. Lee, Givens and Taylor, JJ., concur.